PATRICIA A. FITZMAURICE ET AL. *v.* EDWARD J. FLYNN

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and LONGO, Js.

Argued December 10, 1974—decision released February 11, 1975

*A. Reynolds Gordon,* with whom, on the brief, was *Arthur A. Hiller,* for the appellant (named plaintiff).

*Arnold J. Bai,* with whom, on the brief, was *Paul E. Pollock,* for the appellee (defendant).

MacDonald, J. This appeal is from the judgment rendered upon a verdict for the defendant in a malpractice action. The defendant, Edward J. Flynn, is a physician licensed to practice in the state of Connecticut, specializing in obstetrics and gynecology in the Norwalk area. In April of 1969, the plaintiff Patricia A. Fitzmaurice was a patient of

the defendant. The issue on appeal is limited to a question concerning the qualifications for an expert witness in malpractice cases, and thus a lengthy recitation of the facts involved is not necessary.

Those portions of the finding relative to the limited issue presented may be summarized as follows: On April 21, 1969, the plaintiff saw the defendant for a regular six-month checkup, at which time there appeared no evidence of a lump in the plaintiff's breast. On April 28, 1969, the plaintiff discovered a lump in her right breast and called the defendant. He examined the lump the following day and told the plaintiff he was sure the lump was nothing to worry about. He did not make an appointment for a reexamination of the lump, nor did he advise her to watch the lump. At her next scheduled checkup, in October, 1969, the plaintiff informed the defendant that the lump appeared larger and gave her discomfort. After examining the lump the defendant once again assured the plaintiff not to be concerned with it, and did not schedule a reexamination nor refer her for further testing. At the next regular checkup, on May 11, 1970, the lump was larger and the defendant referred the plaintiff to a surgeon who examined the lump and scheduled a biopsy. The biopsy was performed on May 20, 1970, the lump was found to be malignant, and a radical mastectomy was performed. The plaintiff subsequently brought an action against the defendant, charging malpractice in his diagnosis and alleging a failure to take proper and immediate steps to determine the true nature of the lump in the plaintiff's breast.

During the trial of the case to the jury the plaintiff called Ira S. Goldenberg, a physician, to testify

as an expert as to the proper medical standards of practice among obstetrician-gynecologists concerning breast examinations. The plaintiff elicited the following testimony from Goldenberg to establish his qualifications to testify as an expert in this situation: He is, and has been a New Haven practicing surgeon specializing in breast cancer surgery, a professor of clinical surgery at Yale-New Haven Hospital, a member of the breast cancer task force of the National Cancer Institute, and the principal investigator of the Cooperative Breast Cancer Study Group. He teaches medical students and also other physicians, and lectures to Connecticut obstetricians and gynecologists on breast cancer problems. An important part of his practice consists of breast examinations on patients referred to him by obstetrician-gynecologists. Obstetrician-gynecologists do not do breast surgery in Connecticut and therefore they consult with surgeons on the diagnosis of breast lumps. His referrals come from all over Connecticut. The plaintiff's counsel then asked the following question: "And from talking with obstetricians and gynecologists and from lecturing and from teaching and from the referrals that you get on breast lumps, can you tell us whether or not you are familiar with the proper medical standards of practice among obstetricians-gynecologists concerning breast examinations?"

Counsel for the defendant objected, and the plaintiff's counsel claimed the question on the basis that it was preliminary, that it went to the question of whether the witness knows the standard of practice in question, that a physician does not have to be in the same specialty to testify concerning standards as long as he knows the standards of the specialty

involved, that the general neighborhood is Connecticut, and that a physician may testify concerning standards if he practices anywhere in Connecticut. The record does not reflect the court's ruling with regard to the previous question.[1] The plaintiff, however, then sought to ask the following questions: "Doctor, the standard for obstetricians, not your personal standard, but the standard for obstetricians and gynecologists with regard to breast examination, is there one standard in the State of Connecticut?"

The defendant's counsel objected on the ground that this physician should not testify to the standards for obstetrician-gynecologists for breast examinations, anywhere, because it is out of his specialty. Out of the presence of the jury, by way of an offer of proof, the plaintiff further sought to examine Goldenberg as to the extent of his knowledge. The court, however, sustained the objection and an exception was noted.

In the absence of the jury, as part of the plaintiff's offer of proof, Goldenberg then testified that he deals with obstetrician-gynecologists almost daily concerning breast lumps, and that through his contacts with referring obstetrician-gynecologists he was familiar with their standards of practice regarding problems concerning breast lumps in New Haven and also in the rest of the state. Obstetrician-gynecologists seek consultations for further definition and specific therapy, including surgery when indicated. Both the referring obstetrician-gynecologists and Goldenberg will examine the same lump, including lumps of the

---

[1] It would appear from the plaintiff's brief that the court sustained the defendant's objection to this question.

nature of the plaintiff's lump. They confer both before and after Goldenberg sees the patient. Goldenberg would hear the obstetrician-gynecologists' opinion and course of procedure. Goldenberg also had frequent telephone consultations with obstetrician-gynecologists without seeing the patient.

He further testified that he is considered qualified by the Yale-New Haven Hospital medical center to teach obstetrician-gynecologists concerning breast lumps even though he is a surgeon, and that he knows at least as much as they do about breast lumps. Further, Goldenberg testified that in June, 1972, he was speaking to the Yale-New Haven staff of obstetrician-gynecologists about the "lumpy breast."

Goldenberg specifically testified that with regard to breast lumps, he understood the distinction between his own standard of practice as a surgeon and the standard of obstetrician-gynecologists. He was able to testify as to what the obstetrician-gynecologists' standards were without imposing his own, and that he was as familiar with what their procedures were as another obstetrician-gynecologist would be.

Goldenberg further testified that he was familiar with the standard of practice of obstetrician-gynecologists regarding breast lumps in the communities served by Norwalk Hospital, i.e., Norwalk, Wilton, Westport, Darien, New Canaan, and also in New Haven, New London, Hartford, New Britain, Waterbury, Stamford, Litchfield, Torrington, Danbury, Bridgeport, Milford, Stratford, Branford and the majority of communities in Connecticut, and that there is no difference in the standards of

obstetrician-gynecologists from one town to another; the standards are the same throughout Connecticut. With regard to diagnosis in the field of breast lumps, there is an overlap and close relationship between obstetrician-gynecologists and cancer surgery, according to Goldenberg. Similarly, regarding what goes on in the examining room and diagnosis, and short of actual surgery, there also is an overlap and close relationship.

The plaintiff thereupon reoffered the testimony of Goldenberg concerning the standards of practice for obstetrician-gynecologists on breast lump examinations, claiming the facts set forth above and on the same grounds set forth above, but the evidence was excluded and an exception was duly taken.

Another series of questions[2] was directed to the witness relating to diagnostic standards and conduct, but upon objection the court refused to allow answers, and exceptions were taken. By way of further offer of proof, Goldenberg testified that his medical knowledge came not only from written textbooks and his own cases, but also from discussions with other physicians and from attending lectures and conferences. He stated that breast lump examinations are performed in exactly the same manner by obstetrician-gynecologists and surgeons; and that these two specialties are identical with respect to breast lump examination and diagnosis.

Following the court's exclusion of Goldenberg's testimony the plaintiff subpoenaed four obstetri-

[2] "Do you know what the thinking is of obstetricians and gynecologists about breast lumps?"

"And essentially, is there any difference in the standard in the State?"

"Are you able to tell us what Norwalk area obstetricians-gynecologists do when they find an isolated breast lump?"

cian-gynecologists who practiced in the Norwalk area, three of whom were staff members at Norwalk Hospital, none of whom was familiar with the case.

The standard of care to be exercised by a physician in diagnosis and treatment, and thus the scale by which courts and juries weigh malpractice claims, is well established. "A physician is under a duty to his patient to exercise that degree of care, skill and diligence which physicians in the same general neighborhood and in the same general line of practice ordinarily possess and exercise in like cases." *Snyder* v. *Pantaleo,* 143 Conn. 290, 292, 122 A.2d 21; *Horton* v. *Vickers,* 142 Conn. 105, 113, 111 A.2d 675; *Marchlewski* v. *Casella,* 141 Conn. 377, 380, 106 A.2d 466; *Ardoline* v. *Keegan,* 140 Conn. 552, 556, 102 A.2d 352. Further, the necessity for expert testimony as to this standard is also well established. "Usually, proof of the breach of this duty must rest upon the testimony of an expert witness qualified to state what the particular standard of care requires and to express an opinion that the treatment accorded the patient failed to meet this standard." *Snyder* v. *Pantaleo,* supra.

It appears that the court, in sustaining the defendant's objections to Goldenberg's testimony, relied in part on the theory that he was not competent to attest to the standard of medical care, in this instance in the Norwalk area, because he was from New Haven. In *Geraty* v. *Kaufman,* 115 Conn. 563, 162 A. 33, this court rejected the contention that the "general neighborhood" theory restricted a plaintiff to the use of expert testimony from the confines of the town or city in which the treatment was rendered. Modern medical practices being what they are, it is no longer true that standards

of care and diagnosis will differ substantially from town to town. The territorial limitation on the use of expert testimony was a test, founded in fairness and necessity, that the rural doctor should not be held to the standards of the urban doctor, since the latter had greater access to new theories and had more opportunity to refine his methods of practice. Although there may exist reason to disregard territorial limitations even with regard to state boundaries, we are not required to decide that question at the present time. We merely reaffirm our view from *Geraty* that the general neighborhood is the entire state of Connecticut. The court erred in placing this restriction upon the admission of Goldenberg's testimony.

The remaining basis for the court's ruling sustaining the defendant's objections was that Goldenberg was not of the same medical specialty as the defendant. This court has never specifically ruled this to be a criterion necessary for the admission of expert testimony in a malpractice case. Nor does this appear to arise from the reasoning underlying the necessity for expert testimony, that is, that in most such cases the lay person, including the members of the jury and the presiding judge, does not and can not have the requisite knowledge as to whether proper treatment was given, proper procedure was followed, or proper care was used. *Decho* v. *Shutkin,* 144 Conn. 102, 106, 127 A.2d 618; *Marchlewski* v. *Casella,* supra; *Chubb* v. *Holmes,* 111 Conn. 482, 486, 150 A. 516; Holden & Daly, Connecticut Evidence § 119 (d). The more appropriate rule is that which we have applied to the "neighborhood" theory. "The crucial question is whether he [the expert] knows what . . . [the standards of practice] are." *Ardoline* v. *Keegan,* supra, 557.

Recognizing the complexity of knowledge required in the various medical specialties, more than a casual familiarity with the specialty of the defendant physician is required. The witness must demonstrate a knowledge acquired from experience or study of the standards of the specialty of the defendant physician sufficient to enable him to give an expert opinion as to the conformity of the defendant's conduct to those particular standards, and not to the standards of the witness' particular specialty if it differs from that of the defendant. It is the scope of the witness' knowledge and not the artificial classification by title that should govern the threshhold question of admissibility. Of those decisions in other jurisdictions which have discussed this issue, this appears to be the decided majority view. *Kosberg* v. *Washington Hospital Center, Inc.,* 394 F.2d 947 (D.C. Cir.); *Harris* v. *Smith,* 372 F.2d 806 (8th Cir.); *Baerman* v. *Reisinger,* 363 F.2d 309 (D.C. Cir.); *Frost* v. *Mayo Clinic,* 304 F. Sup. 285 (D. Minn.); *Harris* v. *Campbell,* 2 Ariz. App. 351, 409 P.2d 67; *Mirich* v. *Balsinger,* 53 Cal. App. 2d 103, 127 P.2d 639; *Carbone* v. *Warburton,* 11 N.J. 418, 94 A.2d 680; *Lewis* v. *Read,* 80 N.J. Super. 148, 193 A.2d 255; note, 31 A.L.R.3d 1163, and cases discussed therein. See also note, 46 A.L.R.3d 275 (dealing with cases other than malpractice in diagnosis or choice of treatment).

It is obvious from the plaintiff's extensive offer of proof that Goldenberg met more than the minimal requisites of familiarity with the standards of obstetrician-gynecologists as to the diagnosis and care of breast lumps to qualify him to render an expert opinion. It is precisely such a circumstance that reveals the distinction by title as artificial and

formal, ignoring the substantive expertise of the witness. The error was material and thus prejudicial to the plaintiff's case. *Donch* v. *Kardos,* 149 Conn. 196, 202, 177 A.2d 801.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.