[No. 25757-9-I.   Division One.   May 6, 1991.]

GLADYS M. WHITE, ET AL, *Appellants,* v. KENT MEDICAL CENTER, INC., P.S., ET AL, *Respondents.*

164

*Jack J. Ackerman*, for appellants.

*Jeffrey P. Downer*, for respondents.

AGID, J.—Gladys White appeals a summary judgment order dismissing her medical malpractice claims against Kent Medical Center and four of its doctors (Defendants). She asserts that the trial court erred in concluding that she provided insufficient evidence to withstand the motion, as well as in alternatively dismissing her complaint because of discovery violations. We reverse.

For purposes of this summary judgment motion, the following facts are not in dispute. During the latter half of 1984, White was seen several times at the Kent Medical Center, usually by a different doctor. White, a smoker, complained of hoarseness to each of her doctors. On February 8, 1985, White returned again to the medical center, where she was seen by Dr. Frans Koning. Dr. Koning made note of White's persistent hoarseness and her smoking

habit and referred her to a Kent Medical Center ear, nose and throat (ENT) specialist, Dr. Charles Caplan. Dr. Caplan examined White's larynx and discovered a mass on her left vocal cord. Further tests established that the mass was malignant. On March 19, 1985, an ENT surgeon, Dr. Steven Clark, removed White's entire larynx and performed a left neck dissection.

In July 1986, White filed a personal injury complaint alleging that the Kent Medical Center and four of its doctors negligently failed to conduct appropriate tests or refer her to appropriate specialists. The case proceeded slowly, with Defendants conducting minimal formal discovery and White conducting none. Finally, during 1988 and 1989, Defendants deposed White and her husband, and nondefendant Drs. Clark, Caplan, and Koning.

In October 1989, the matter was preassigned to a judge as part of the court's individual calendaring project. Following an initial pretrial conference, the judge entered an order setting trial and pretrial schedules. Trial was set for March 5, 1990. Under the order, White was required to identify expert and other witnesses 90 days before trial, and discovery was to be completed 35 days before trial. To that end, on December 6, White's attorney notified Defendants by letter that he would call Drs. Clark, Caplan and Koning as expert witnesses. The letter further stated that "[y]ou have deposed these witnesses, and, I want to make sure that you understand that I regard them as expert witnesses in this case." He also deposed two of the defendant doctors in February 1990.

Defendants moved for summary judgment of dismissal. They argued that White's complaint should be dismissed because she lacked any admissible expert testimony regarding the standard of care applicable to the Defendants, had not answered interrogatories propounded in July 1989, and had not fully complied with the court's pretrial order.

White responded by offering as evidence excerpts from the depositions of her experts and two of the defendant

doctors. White claimed that this evidence established the applicable standard of care; that is, when a patient who smokes complains about 4 to 6 weeks of hoarseness, he or she should receive a vocal cord examination. White's evidence included testimony by her ENT surgeon, Dr. Clark, that 4 to 6 weeks of hoarseness in a patient who smokes is cause for that patient to be referred to a specialist, and testimony by Dr. Caplan, the ENT specialist who diagnosed White's cancer, that "a smoker who has intermittent hoarseness needs to have the larynx examined." She also submitted testimony from two of the defendant doctors, Dr. Baruck and Dr. Bauch. Dr. Baruck had testified that persistent hoarseness of 4 to 6 weeks would "require" a vocal cord examination, and that if the doctor failed to have the vocal cords examined, he or she "would be neglecting the patient." Dr. Bauch had testified that "[a] patient having six weeks of hoarseness either by history or by direct observation of a physician should have an exam of the vocal cords." Both Dr. Baruck and Dr. Bauch are general practitioners.

After White filed her responsive materials, Defendants filed a rebuttal memorandum. In that memorandum, Defendants argued for the first time that White had not shown that Defendants caused her any damage. By attorney affidavit, White called the trial court's attention to Defendants' having belatedly raised the proximate cause issue, and asserted that detailed testimony on proximate cause had not been submitted in response to Defendants' motion "because the motion did not raise any issue of proximate cause." Nevertheless, argument on Defendants' motion proceeded as scheduled and encompassed all issues raised by Defendants, including the proximate cause issue first argued in Defendants' rebuttal materials.

The trial court granted Defendants' motion. The judge ruled that White had not set forth specific facts showing that there was a genuine issue for trial "with regard to the standard of care, with regard to whether or not the standard of care has been breached, and whether or not there is

any damage as a result of that breach." He also ruled that White's discovery violations warranted dismissal of her complaint. This appeal followed.

## Proximate Cause

Preliminarily, we address the trial court's consideration of the proximate cause issue first raised in Defendants' reply memorandum. At oral argument in this court, Defendants contended that it was proper to address proximate cause in their rebuttal materials because the deposition testimony submitted by White in response to their motion included *testimony* concerning causation. We disagree.

It is the responsibility of the moving party to raise in its summary judgment motion all of the issues on which it believes it is entitled to summary judgment. Allowing the moving party to raise new issues in its rebuttal materials is improper because the nonmoving party has no opportunity to respond. It is for this reason that, in the analogous area of appellate review, the rule is well settled that the court will not consider issues raised for the first time in a reply brief. *E.g., In re Marriage of Sacco,* 114 Wn.2d 1, 5, 784 P.2d 1266 (1990); *Stevens v. Security Pac. Mortgage Corp.,* 53 Wn. App. 507, 519, 768 P.2d 1007, *review denied,* 112 Wn.2d 1023 (1989); *State v. Manthie,* 39 Wn. App. 815, 826 n.1, 696 P.2d 33, *review denied,* 103 Wn.2d 1042 (1985); RAP 10.3(c).

Moreover, nothing in CR 56(c), which governs proceedings on a motion for summary judgment, permits the party seeking summary judgment to raise issues at any time other than in its motion and opening memorandum. The rule sets out the timetable for filing and serving the motion and supporting evidence and for the nonmoving party to file its opposing memoranda, affidavits, and other documentation. After the nonmoving party has filed its materials, the rule allows the moving party to "file and serve *any rebuttal documents* not later than 5 calendar days prior to the hearing." (Italics ours.) CR 56(c). Rebuttal documents

are limited to documents which explain, disprove, or contradict the adverse party's evidence. *See* Black's Law Dictionary 1139 (5th ed. 1979); *Kremer v. Audette,* 35 Wn. App. 643, 647–48, 668 P.2d 1315 (1983).

Here, White's responsive materials did not seek summary judgment on or otherwise put into issue the question of proximate cause. Her inclusion of deposition testimony that refers to proximate cause does not raise the issue in the context of a summary judgment motion. There was, therefore, no proximate cause question for Defendants to rebut. Consequently, their unwarranted attempt to do so was beyond what is allowed under CR 56(c).

In sum, it is incumbent upon the moving party to determine what issues are susceptible to resolution by summary judgment, and to clearly state in its opening papers those issues upon which summary judgment is sought.[1] If the moving party fails to do so, it may either strike and refile its motion or raise the new issues in another hearing at a later date. Accordingly, we hold that it was error for the court to consider the proximate cause issue first raised in Defendants' reply memorandum and to rely on that issue as a basis for granting summary judgment. We therefore do not discuss this issue on appeal.[2]

## STANDARD OF CARE

We next consider whether the trial court properly granted summary judgment on the ground that White presented inadequate evidence of the applicable standard of

---

[1] Here, counsel candidly admitted at oral argument that he first recognized the potential strength of Defendants' proximate cause argument when he read White's responsive materials. This does not provide a basis for depriving White of the opportunity to make an adequate response.

[2] Because the issue may arise on remand, we note that the specialists' testimony upon which Defendants relied in the trial court to establish a lack of proximate cause is too ambiguous to support summary judgment on this issue. Both ENT specialists testified that White's tumor had been present for a number of months. This testimony appears to be sufficient to raise a question of fact as to whether an immediate referral would have obviated the need for the radical surgical procedure used here.

care. Summary judgment is appropriately granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

In a summary judgment motion, the moving party has the initial burden of showing the absence of an issue of material fact. This burden can be met by showing that there is an absence of evidence supporting the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); *Young v. Key Pharmaceuticals, Inc.,* 112 Wn.2d 216, 225–26, 770 P.2d 182 (1989). In this situation, the moving party is not required to support the motion by affidavits or other materials negating the opponent's claim. *Celotex,* 477 U.S. at 322–23; *Young,* 112 Wn.2d at 225–26. The moving party must still, however, identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. 323 (quoting Fed. R. Civ. P. 56); *Baldwin v. Sisters of Providence in Wash., Inc.,* 112 Wn.2d 127, 132, 769 P.2d 298 (1989). If the moving party does not meet this initial burden, summary judgment may not be entered, regardless of whether the opposing party submitted responding materials. *Jacobsen v. State,* 89 Wn.2d 104, 108, 569 P.2d 1152 (1977); *see also Baldwin,* 112 Wn.2d at 132.

Defendants only marginally complied with this requirement. Their claim that White had no competent expert testimony regarding the applicable standard of care was not substantiated by reference to any pleadings, documents, or deposition testimony. Not until they submitted their "rebuttal documents" did Defendants point out those parts of the depositions upon which they relied to support their lack of evidence claim. Nevertheless, we do not resolve this case on the ground that Defendants did not meet their initial burden. It is difficult to prove a negative, and in some

circumstances the only way that the moving party will be able to show that there is no material issue of fact is by way of reply to the responding party's citations to the record. We emphasize, however, that only rarely will a moving party comply with the strict requirements of *Celotex*, *Young*, and *Baldwin* without having made specific citations to the record in its opening materials.

We must now examine the sufficiency of White's evidence of the standard of care. When a properly supported motion for summary judgment is made, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. In the case of a claim for medical negligence, facts concerning the standard of care and a breach of that standard ordinarily must be shown by expert medical testimony. *Noel v. King Cy.*, 48 Wn. App. 227, 231, 738 P.2d 692 (1987). Whether the nonmovant's factual showing satisfies this requirement is determined by examining the evidence and inferences therefrom in the light most favorable to that party. *Young*, 112 Wn.2d at 226.

Defendants argue that White's evidence of the applicable standard of care is inadequate because ENT specialists cannot testify as to the standard of care governing a general practitioner, because none of the doctors testified in terms of "standard of care", and because none of the doctors gave testimony about the statewide standard of care existing in 1984, the time of White's treatment. These arguments are unpersuasive.

First, Defendants' "specialist" argument ignores that part of White's evidence which consists of deposition testimony from two of the general practitioner defendant doctors. These doctors both testified that a vocal cord examination is required for a patient with a 4– to 6–week history of hoarseness, and one testified that it would be neglect not to order a vocal cord examination for a patient with that history. Defendants do not challenge the ability

of these doctors to state the applicable standard of care. Their testimony must, therefore, be deemed competent.[3]

Second, there is no legal basis for Defendants' assertion that in order to be admissible, an expert's testimony must be in "standard of care" language. For this proposition, Defendants cite *Adams v. Richland Clinic, Inc., P.S.*, 37 Wn. App. 650, 681 P.2d 1305 (1984). The *Adams* court did not, however, hold that expert testimony about the applicable standard of care and breach thereof must be in standard of care terminology. Rather, that court held that an expert's *personal* opinion is insufficient to establish the recognized standard of care. In so holding, the court noted that expert testimony is likely to be mere personal opinion when the experts expressly state that their opinions are personal and the questions propounded to the experts are not in standard of care terminology. 37 Wn. App. at 655.

Absent relevant legal authority, we reject Defendants' "standard of care" assertion. To require experts to testify in a particular format would elevate form over substance. In order to be admissible, it is only necessary that the expert's standard of care testimony be more than a personal opinion. This requirement is met so long as it can be concluded from the testimony that the expert was discussing general, rather than personal, professional standards and expectations. *See, e.g., Adams*, 37 Wn. App. at 655–56. Because there is no indication that the testimony relied upon here was anything other than the physicians' professional opinions of the general standard that applies when presented with symptoms like White's, the requirement is met in the instant case.

Third, in this particular case it was unnecessary for White's experts to expressly testify about the statewide

---

[3]Defendants assert on appeal that White did not file the depositions of Drs. Bauch and Baruck in a timely manner, and that this testimony should, therefore, not be considered. This issue was not raised to the trial court. Defendants have, therefore, waived this challenge to White's evidence. *E.g., Turner v. Kohler,* 54 Wn. App. 688, 691 n.1, 775 P.2d 474 (1989).

standard of care existing in 1984. *See generally* RCW 7.70-.040. All of the doctors, Defendants included, testified that a vocal cord examination is warranted for a patient who smokes and has been hoarse for 4 to 6 weeks. Their unanimous agreement on this issue made it unnecessary for White to provide more detailed testimony as to the standard of care.

■ Finally, Defendants' contention that medical specialists cannot testify about the standard of care applicable to general practitioners is overly broad.[4] There is no such hard and fast rule. We recognize that a general practitioner cannot normally be held to the standard of care of a specialist. This does not, however, automatically render the specialist's testimony about the general practitioner's standard of care inadmissible.

So long as a physician with a medical degree has sufficient expertise to demonstrate familiarity with the procedure or medical problem at issue, "[o]rdinarily [he or she] will be considered qualified to express an opinion on any sort of medical question, including questions in areas in which the physician is not a specialist." 5A K. Tegland, Wash. Prac., *Evidence* § 290[2], at 386 (3d ed. 1989). Thus, in *Swanson v. Hood,* 99 Wash. 506, 514–15, 170 P. 135 (1918), the court found an osteopath competent to testify in a malpractice suit against an allopath. The court explained that so long as the criterion by which the witness measures defendant's treatment is that of defendant's own school of medicine, the witness is not disqualified merely because he belongs to another school. *Swanson,* 99 Wash. at 514–15; *accord, Miller v. Peterson,* 42 Wn. App. 822, 830, 714 P.2d 695 (orthopedic surgeon could testify about podiatrists'

---

[4]None of the cases Defendants cite involve testimony by a medical specialist about a general practitioner's standard of care. *See Young,* 112 Wn.2d at 227–31 (pharmacist not competent to testify about physician standard of care); *McKee v. American Home Prods. Corp.,* 113 Wn.2d 701, 782 P.2d 1045 (1989) (Arizona physician not competent to testify about Washington pharmacist's standard of care); *Swanson v. Brigham,* 18 Wn. App. 647, 571 P.2d 217 (1977) (plaintiff who submitted no expert medical testimony did not establish standard of care).

standard of care so long as the surgeon and podiatrist used the same methods of treatment), *review denied,* 106 Wn.2d 1006 (1986).

Cases from other jurisdictions are in accord. In *Kearns v. Clark,* 343 Pa. Super. 30, 493 A.2d 1358, 1360–61 (1985), the court found a urologist competent to express an opinion about a gynecologist's performance when the urologist had some familiarity with the surgical procedures at issue. In *Fitzmaurice v. Flynn,* 167 Conn. 609, 356 A.2d 887 (1975), it was held to be error to refuse testimony by a breast cancer surgeon about breast examination standards among obstetrician–gynecologists. As the *Fitzmaurice* court explained: "It is the scope of the witness' knowledge and not the artificial classification by title that should govern the threshhold [*sic*] question of admissibility" of expert medical testimony in a malpractice case. *Fitzmaurice,* at 618; *accord, Collom v. Pierson,* 411 N.W.2d 92, 96 (N.D. 1987); *see also* ER 702 (witness qualifies as expert by knowledge, skill, experience, training, or education). Thus, while the standard of care for a medical specialist cannot be imposed on a general practitioner, if a specialist has the requisite knowledge about the standard of practice for general practitioners, he or she may testify about that standard.[5]

Based on the analysis set forth above, we conclude that the trial court erred in finding White's evidence insufficient to establish the applicable standard of care. While the questions of the experts could most certainly have been

---

[5]The following dictum in *Young* is not to the contrary: "In fact, not even a medical degree bestows the right to testify on the technical standard of care; a physician must demonstrate that he or she has sufficient expertise in the relevant specialty." 112 Wn.2d at 229. It simply stands for the proposition that possession of a medical degree is insufficient, standing alone, to qualify an expert in a medical specialty absent a showing that the physician has additional relevant technical expertise.

At most, the *Young* dictum would disqualify a general practitioner who was offered as an expert in a specialty in which he or she lacked sufficient training or experience. It says nothing about the issue presented here, *i.e.,* whether a properly qualified specialist may testify about the standard of care of a general practitioner.

posed in a manner better designed to obviate the issue presented here, it is significant that all of the doctors, defendant general practitioners as well as specialists, agreed that a 4– to 6–week history of hoarseness, especially in a patient who smokes, is enough to establish the need for a vocal cord examination. This concurrence establishes that the alleged standard of care is more than mere personal opinion and is sufficient to establish, at least for summary judgment purposes, the ENT specialists' knowledge of the standard of care applicable to general practitioners.

### BREACH OF STANDARD OF CARE

█ Next, we examine the evidence to determine whether it was sufficient to avoid summary judgment on the issue of whether Defendants breached the applicable standard of care. Although it is certainly not always the case, "the failure to attempt to diagnose and treat a life–threatening disease can make the physician negligent as a matter of law." *Keogan v. Holy Family Hosp.*, 95 Wn.2d 306, 326, 622 P.2d 1246 (1980).

█ Here, the evidence establishes that: (1) White complained about hoarseness to her doctors over a period of months; (2) the standard of care is that a patient with 4 to 6 weeks of hoarseness should undergo a vocal cord examination; (3) it is neglect for a doctor not to order a vocal cord examination for such a patient; and (4) Defendants treated White, but did not conduct or refer her for a vocal cord examination. While this might not be sufficient proof of a breach for purposes of trial, it is sufficient at this stage of the proceedings. Summary judgment must be denied "if the record shows any reasonable hypothesis which entitles the nonmoving party to relief." *Mostrom v. Pettibon*, 25 Wn. App. 158, 162, 607 P.2d 864 (1980).

### DISCOVERY VIOLATIONS

█ We last consider the trial court's dismissal of White's complaint on the alternative ground of White's discovery violations. CR 37(b) permits a trial court to order sanctions when a party or its attorney violates a discovery

order. A trial court's choice of what sanction to impose is generally within the court's discretion. *E.g., Rhinehart v. KIRO, Inc.,* 44 Wn. App. 707, 710, 723 P.2d 22 (1986), *review denied,* 108 Wn.2d 1008, *appeal dismissed sub nom. Rhinehart v. Tribune Pub'g Co.,* 484 U.S. 805, 98 L. Ed. 2d 16, 108 S. Ct. 51 (1987). However, before resorting to default or dismissal, the most severe sanctions available under the rule, the court must consider, on the record, whether a lesser sanction would suffice. *Snedigar v. Hoddersen,* 114 Wn.2d 153, 170, 786 P.2d 781 (1990). Additionally, due process considerations require that, before a trial court dismisses an action or counterclaim or renders a judgment by default, there must have been "a willful or deliberate refusal to obey a discovery order, which refusal substantially prejudices the opponent's ability to prepare for trial." *Associated Mortgage Investors v. G.P. Kent Constr. Co.,* 15 Wn. App. 223, 228–29, 548 P.2d 558, *review denied,* 87 Wn.2d 1006 (1976). Finally, the trial court must make it clear on the record whether the factors of willfulness and prejudice are present before it enters a default or dismissal. *Snedigar,* 114 Wn.2d at 170.

The record contains none of the required determinations. The trial court did not consider willfulness, prejudice, or the appropriateness of a lesser sanction. While sanctions may be appropriate, we cannot evaluate that issue on the record before us. Accordingly, we reverse this aspect of the order of summary judgment and leave any further consideration of sanctions to the discretion of the trial court in future proceedings.

The judgment is reversed.

GROSSE, C.J., and SCHOLFIELD, J., concur.