115 P.3d 1023 (2005)
So Young MORTON and William G. Morton, wife and husband, Appellants,
v.
Tori A. McFALL, M.D. and John T. Joseph, M.D., Respondents.
No. 54642-2-I.
The Court of Appeals of Washington, Division One.
July 5, 2005.
*1024 Peter Nichols, Attorney At Law, Seattle, WA, James Beecher, Attorney At Law, Seattle, WA, for Appellants.
Dan Keefe, William Hickman, Mary Spillane, Seattle, WA, for Respondents.
BECKER, J.
¶ 1 So Young Morton had a suspicious mass in the upper portion of her right lung surgically removed. The surgery was unnecessary, as it turned out, because Morton had tuberculosis, not cancer. Discounting testimony by an internist who was experienced in diagnosing lung problems, the trial court dismissed Morton's medical negligence action on summary judgment.
¶ 2 No hard and fast rule requires testimony on the standard of care in a medical negligence action to come from a physician who has the same specialty as the defendant. The internist testified that Dr. Joseph, the lung specialist, should have done more to rule out tuberculosis before recommending surgery to diagnose cancer. Because the internist had sufficient expertise to demonstrate familiarity with the medical problem at issue, and gave an opinion rooted in the facts of the patient's treatment, we reverse the order granting summary judgment to Dr. Joseph.
¶ 3 We affirm the order of summary judgment dismissing the claim against Dr. McFall, the surgeon, who relied on Dr. Joseph's statement that Morton's test results were negative for infectious disease. The record contains no evidence that such reliance is a breach of the standard of care.

FACTS
¶ 4 Physicians at Valley Medical Center Emergency Department examined So Young Morton and detected a mass in the upper lobe of her right lung on May 12, 2000. Morton had gone to Valley for recurrent respiratory symptoms and upper thoracic pain. In connection with this visit, Morton submitted sputum samples to test for tuberculosis. She also had a Computed Tomography (CT) scan, which revealed an irregular mass in the right upper lung.
*1025 ¶ 5 Morton's primary care physician referred her for a follow-up pulmonary consultation with Dr. John Joseph, a pulmonologist. Dr. Joseph's documentation of the initial consultation on May 19, 2000 included this note: "Apparently, she has turned in three sputum for AFB, however, those results are not available on the computer."[1] Dr. Joseph found that the mass was "very suspicious for bronchogenic carcinoma despite the patient's history of lifelong nonsmoking and no history of exposure to carcinogenic agents."[2] Dr. Joseph's notes show that he considered tuberculosis as a less likely diagnosis because that disease is "more commonly seen in the apex and the anterior segment of the right upper lobe rather than the posterior segment" as was the case with Morton.[3]
¶ 6 Dr. Joseph scheduled Morton for a bronchoscopy and a CT-guided biopsy of the lesion itself. The bronchoscopy showed upper lobe granulomatous inflammation with necrosis, a sign of chronic infection. The biopsy showed acute inflammation and "rare, mildly atypical cells".[4] Neither test revealed a definitive diagnosis of either tuberculosis or cancer.
¶ 7 Dr. Joseph testified that he discussed the test results with Morton. He told her one possible course of action was another bronchoscopy and CT-guided biopsy, which might or might not establish a diagnosis. Another course of action was waiting several months to see if the condition improved. But Morton "looked horrified" and stated that she wanted a more "definitive test."[5] In June 2000, Dr. Joseph referred Morton to Dr. Tori McFall, a surgeon, for an upper right lobectomy. The recommended lobectomy was purely diagnostic, designed to get a definitive diagnosis as to whether the lung mass was in fact cancerous.
¶ 8 In discussing the referral with Dr. Joseph, Dr. McFall asked him if an infectious disease workup had been completed. Dr. Joseph told Dr. McFall that a workup had been completed and the results were negative.[6] After consultation with Morton, Dr. McFall removed the upper lobe of her right lung on July 5, 2000. The surgery was uneventful. The analysis of the mass revealed tuberculosis, not cancer.
¶ 9 On July 6, 2000, the day after Morton's surgery, a doctor from the Seattle-King County Health Department called Dr. Joseph to report that they had just received a positive tuberculosis test result on Morton's sputum samples, from the lab where the sputum samples had been sent. Dr. Joseph noted this in his chart and said, "Unfortunately this was reported positive by the lab on 6/23/00; however, it's unclear whether anyone was notified. Unfortunately, Mrs. Morton underwent thoracotomy yesterday for the right upper lobe lesion."[7]
¶ 10 Morton was discharged from the hospital four days after her surgery. Sometime after her release, Morton sought treatment for discomfort in deep breathing, compromised range of motion, frequent upper respiratory infections, shortness of breath, and decreased lung function.[8]
¶ 11 Morton sued Dr. Joseph and Dr. McFall for negligence in June 2002. In February 2004, both defendants moved for summary judgment on the grounds that Morton had failed to disclose on her witness list an expert witness who would testify as to standard of care and breach. Dr. Joseph argued in addition that Morton could not establish *1026 causation. In response, Morton submitted the declaration of Dr. Cynthia Rasch. Dr. Rasch, an internist, said she was familiar with the standard of care for assessing and diagnosing pulmonary problems. Based on her review of Morton's medical records, Dr. Rasch concluded that the defendants had breached the standard of care, proximately causing Morton to undergo unnecessary surgery:
4.) As a practicing doctor in the Seattle area, I am familiar with the standard of care for assessing and diagnosing pulmonary problems with patients. I have reviewed the medical records submitted to me and the Plaintiff received from Dr. John Joseph and Dr. Tori McFall and determined that, for the reasons outlined below, on a more likely than not basis, the defendant health care providers failed to exercise that degree of care, skill and learning expected of a reasonably prudent health care provider at the time in the profession or class to which they belong, in the State of Washington, acting in the same or similar circumstances. This failure proximately caused the plaintiff to undergo a surgical procedure that was unnecessary and has led her to experience the physical symptoms of which she has complained.
5.) My conclusion is based upon the fact that the doctors involved in the Plaintiff's care did not obtain the results of the sputum test prior to recommending and performing surgery on the Plaintiff. As noted in Dr. Joseph's chart on July 13, 2000, if he had known that the sputum test was positive for TB the surgery could have been avoided. It is clear from the ER Report of May 12, 2000, that a sputum culture was performed. A sputum test would be included in an infectious disease workup. Likewise, a PPD, a simple skin test could help evaluate the potential for tuberculosis.
6.) In the present case the defendant health care providers did not wait for the results of the sputum test prior to recommending and performing surgery. The results of the sputum test which the defendants received the day after the surgery are clear that surgical intervention was not necessary in this case. The bronchoscopy showed right upper lobe granulomatous inflammation with necrosis. This is a sign of chronic infection and should have been worked up. The fact that Mrs. Morton was a non smoker, no history of asbestos, only 50 years of age and from Korea, put her at a higher risk for tuberculosis and a lower risk for cancer.
A thoracotomy would not have been the treatment of choice for tuberculosis. These facts support my conclusions in paragraphs 4 and 5 above.[[9]]
¶ 12 Both defendants replied by attacking the declaration of Dr. Rasch and her qualifications as an expert. Superior Court Judge McDermott orally denied the motion without prejudice, specifically noting that Dr. Rasch's declaration "presented acceptable evidence on the standard of care. However, defendants have the opportunity to depose Dr. Rasch to clarify her opinions", and could renew their motions for summary judgment if appropriate.[10]
¶ 13 The defendants deposed Dr. Rasch on April 26, 2004. After this deposition, both defendants renewed their motions for summary judgment. Dr. Joseph's motion added a challenge to Morton's evidence of damages. Superior Court Judge White granted these motions on June 9, 2004. Judge White assumed for purposes of the motion that Dr. Rasch was qualified to testify as to the appropriate standard of care, although he stated that the "whole issue of her qualification may well be an alternative ground to uphold the Court's ruling here."[11] The basis on which he granted summary judgment was that the declaration and deposition of Dr. Rasch failed to allege specific facts that established either the relevant standard of care or the defendants' breach. Morton appeals.

ANALYSIS
¶ 14 This court reviews summary judgment orders de novo. Hadley v. Maxwell, *1027 144 Wash.2d 306, 310, 27 P.3d 600 (2001). When reviewing an order of summary judgment, the appellate court engages in the same inquiry as the trial court. The reviewing court considers the facts and all reasonable inferences from the facts in the light most favorable to the nonmoving party. Right-Price Recreation, L.L.C. v. Connells Prairie Community Council, 146 Wash.2d 370, 381, 46 P.3d 789 (2002).
¶ 15 By statute, a plaintiff alleging medical negligence must prove the following elements:
(1) The health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he belongs, in the state of Washington, acting in the same or similar circumstances;
(2) Such failure was a proximate cause of the injury complained of.
RCW 7.70.040.
¶ 16 The defendants first argue that Dr. Rasch is not qualified to testify as to the standard of care for either a pulmonologist (Dr. Joseph) or a surgeon (Dr. McFall).
¶ 17 In a medical negligence action, the defendant's conduct must be measured against "that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he belongs, in the state of Washington, acting in the same or similar circumstances." RCW 7.70.040(1).
¶ 18 The standard of care required of professional practitioners "must be established by the testimony of experts who practice in the same field." McKee v. American Home Products Corp., 113 Wash.2d 701, 706, 782 P.2d 1045 (1989). In order to testify on the applicable standard of care, "a physician must demonstrate that he or she has sufficient expertise in the relevant specialty." Young v. Key Pharms., Inc., 112 Wash.2d 216, 229, 770 P.2d 182 (1989). The defendants say that Dr. Rasch lacks sufficient expertise because she has not trained or practiced as a pulmonologist or a surgeon, and has never diagnosed or treated a patient with active tuberculosis except during her training.
¶ 19 However, to practice "in the same field" means that a pharmacist may not define the standard of care for a physician (Young); and that a physician may not do so for a pharmacist (McKee). There is no general rule that prohibits a specialist from testifying regarding the standard of care applicable to a general practitioner; or a specialist in one area from testifying about another area. White v. Kent Medical Ctr., Inc., 61 Wash.App. 163, 173, 810 P.2d 4 (1991); Eng v. Klein, 127 Wash.App. 171, 172, 110 P.3d 844, 845 (2005)("It is the scope of a witness's knowledge and not artificial classification by professional title that governs the threshold question of admissibility of expert medical testimony in a malpractice case.")
¶ 20 In White, we considered whether an ear, nose, and throat specialist's testimony regarding the standard of care of a general practitioner could satisfy a plaintiff's summary judgment burden. In reversing summary judgment, we said that so long as a physician with a medical degree has sufficient expertise to demonstrate familiarity with the procedure or medical problem at issue, ordinarily the physician "will be considered qualified to express an opinion on any sort of medical question including questions in areas in which the physician is not a specialist.'" White, 61 Wash.App. at 173, 810 P.2d 4 (quoting 5A Karl Tegland, Washington Practice, Evidence § 290[2], at 386 (3rd Ed. 1989)).
¶ 21 Morton contends that the applicable standard of care relates to the diagnosis and treatment of tuberculosis, an area in which Dr. Rasch is qualified to testify by virtue of her experience and specialty. Dr. Joseph argues that the applicable standard of care is not for the diagnosis and treatment of tuberculosis, but for diagnosis and treatment where multiple test results are inconclusive, sputum test results are missing, and the patient is pressing for a definitive diagnosis. He claims Dr. Rasch is unqualified because she has never worked up a patient with "a *1028 suspicious lung mass that was ultimately diagnosed as tuberculosis".[12]
¶ 22 It is undisputed that tuberculosis was a potential diagnosis, even in the initial consultations. And Dr. Rasch testified that in her practice she has ordered many sputum and skin tests to determine whether tuberculosis was present. Her declaration states that a sputum test would be included in an infectious disease workup. Applying the reasoning in White here, nothing indicates that Dr. Rasch is unqualified to testify that the defendants should have ruled out tuberculosis before performing an invasive surgery.
¶ 23 Dr. Joseph next argues that Dr. Rasch's testimony fails to establish a standard of care or breach because she offers only conclusory assertions that are not based on the facts of the case. To support this argument, Dr. Joseph cites Guile v. Ballard Community Hosp., 70 Wash.App. 18, 851 P.2d 689 (1993). In that case, we affirmed the grant of a motion for summary judgment because the expert witness opined in conclusory fashion that Guile's postoperative complications were caused by "faulty technique." Such an opinion lacks adequate factual support. Guile, 70 Wash.App. at 26, 851 P.2d 689. Dr. Joseph contends the same is true of Dr. Rasch's opinion that Dr. Joseph breached the standard of care by failing to track down the sputum test results. He contends she cannot legitimately reach that conclusion without knowing about and discussing all the efforts he did make to locate the sputum test results before referring Young to Dr. McFall for surgery.
¶ 24 This argument misses the mark. Dr. Rasch's opinion is not conclusory like the affidavit in Guile. Her testimony clearly identifies the facts supporting her opinion that it was a breach of the standard of care to recommend or perform the lobectomy without first obtaining the results of the sputum test. Testimony by Dr. Joseph about the reasons why he did not think it necessary to wait for sputum test results creates an issue of fact for the jury; it does not override Dr. Rasch's opinion as a matter of law.
¶ 25 We conclude the trial court erred in granting Dr. Joseph's motion for summary judgment. The evidence is sufficient to establish not only negligence but also causation and damages. Dr. Rasch reviewed Dr. Joseph's chart notes of July 13, 2000, in which he wrote that he told Morton "that a positive TB culture was not reported to us and could have avoided this surgery."[13] This admission, coupled with Dr. Rasch's opinion that surgical intervention was unnecessary, establishes a material question of fact as to causation. As to damages, it is sufficient that Morton underwent unnecessary surgery.
¶ 26 As to Dr. McFall, however, the trial court did not err. Morton's theory is that the physicians should have obtained the results of an infectious disease workup before doing the diagnostic surgery for cancer. She has not presented evidence that Dr. McFall breached this standard. Dr. Joseph told Dr. McFall that the infectious disease workup was negative.[14] Dr. Rasch does not say that Dr. McFall should have done her own workup. In fact, Dr. Rasch agreed that it would be appropriate for Dr. McFall to obtain the results of the tests from the doctor who ordered them.[15] A reasonable jury could only conclude that Dr. McFall was entitled to assume the cultures were negative for tuberculosis.
¶ 27 Affirmed as to Dr. McFall, reversed as to Dr. Joseph.
WE CONCUR: APPELWICK and GROSSE, JJ.
NOTES
[1] Clerk's Papers at 24. Acid Fast Bacilli (AFB) is the class of bacteria that includes tuberculosis.
[2] Clerk's Papers at 25.
[3] Clerk's Papers at 25.
[4] Clerk's Papers at 27 (Dr. McFall's History and Physical chart notes of Morton, submitted in support of Dr. McFall's motion for summary judgment).
[5] Clerk's Papers at 356 (Single page from deposition of Dr. Joseph, submitted in support of Dr. McFall's motion for summary judgment); see also Clerk's Papers at 322 (Partial deposition of Dr. Joseph).
[6] Clerk's Papers at 47 (Deposition of Dr. McFall); see also Clerk's Papers at 322 (Dr. Joseph, at page 39 of deposition, does not dispute telling Dr. McFall the infectious disease workup was negative).
[7] Clerk's Papers at 88.
[8] Clerk's Papers at 251 (Deposition of Dr. Kim, Morton's treating physician).
[9] Clerk's Papers at 82-83 (Declaration of Dr. Rasch).
[10] Clerk's Papers at 313.
[11] Report of Proceedings at 119.
[12] Brief of Appellant Joseph at 26.
[13] Clerk's Papers at 268.
[14] Clerk's Papers at 47 (Deposition of Dr. McFall); Clerk's Papers at 322 (Deposition of Dr. Joseph).
[15] Clerk's Papers at 120 (Deposition of Dr. Rasch at p. 98).