IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| RICARDO CASTILLO, | ) | |
| | ) | No. 32094-4-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GRANT COUNTY PUBLIC UTILITY | ) | UNPUBLISHED OPINION |
| DISTRICT, | ) | |
| | ) | |
| Respondent. | ) | |

KORSMO, J. — This interlocutory appeal involves a certified question concerning the admissibility of the plaintiff's expert's testimony following the trial court's granting of a partial summary judgment on one of plaintiff's theories of the case. We affirm and remand for trial.

FACTS

Appellant Ricardo Castillo was injured when, due to miscommunication, a circuit breaker exploded after an employee of defendant Grant County Public Utility District (PUD) energized the breaker while Mr. Castillo was working on it. He suffered serious injuries and ultimately filed suit against the PUD, alleging two different theories of liability.

Some discussion of the incident and ensuing litigation is necessary to understand the circumstances. Mr. Castillo is a longtime employee of Skone & Connor Ranch in Warden. His responsibilities include managing and maintaining the irrigation system. In order to address corrosion in the wiring of the system's circuit breaker, Mr. Castillo needed the PUD to temporarily disconnect the power so that he could perform the repairs and then have the PUD reengage the power.

Anticipating that only 20 minutes would be needed to perform the repairs, a PUD lineman, John Johnston, was to wait out the repair period and then turn the power back on in order to avoid a second trip to the ranch. Mr. Johnston arrived at the location first and disconnected the power by removing the meter from its base. The electrical system in question directed the power from the power lines through a transformer to the meter and then across the street to the circuit breaker. From there the power flowed to the irrigation equipment. In order to disconnect the meter base, Mr. Johnston had to flip a meter bypass lever up. By lifting the lever up, he could then disconnect the meter. Another effect of bypassing the meter, however, was to send the power directly to the circuit breaker.

Mr. Castillo arrived and started working. However, he could not entirely disconnect all of the corroded wiring within the circuit breaker and it appeared that he was going to need to bring an electrician to continue the repairs or to replace the breaker. He temporarily stopped his repair efforts and notified Mr. Johnston that the power would

2

need to remain off indefinitely. What happened next is in dispute between the two sides. According to Mr. Johnston, Mr. Castillo told him that the breaker would need replacing and the power should remain disconnected until that work was done. Mr. Johnston responded that he would have to temporarily reenergize the system in order to put in a nonconductive "pie plate" in place of the meter. According to Mr. Castillo, he did not definitively tell Mr. Johnston that an electrician was needed and Mr. Johnston did not tell him about the need to temporarily reenergize the system in order to install the "pie plate."

What happened next is undisputed. Mr. Castillo went to his truck to pick up some lubricant and returned to the breaker. Meanwhile, Mr. Johnston crossed the street and moved the lever in order to install the "pie plate." The power flowed to the circuit breaker, causing it to explode and injure Mr. Castillo.

Mr. Castillo sued the PUD, alleging that his injuries were caused by the negligence of Mr. Johnston in energizing the circuit breaker while he was working on it and by the PUD's failure to abide by Washington Administrative Code (WAC) regulations governing high voltage power. He retained James Voss as an expert witness. Mr. Voss had spent his career in electricity, starting as a linemen for Puget Sound Energy before becoming a field safety coordinator and high voltage safety training director for Potelco. Voss finished his career as a high voltage safety inspector for the Department of Labor and Industries. During his career, he had taught courses related to the standard of care for public utility linemen. Voss contended that the lineman should have cut the

3

power to the transformer rather than at the meter as would have been required by the Washington Administrative Code.[1]

The PUD eventually moved for summary judgment on both theories of liability and, if only the WAC-based theory was dismissed, to exclude the testimony of Mr. Voss because his testimony was based solely on that theory of the case. After hearing argument and a motion for reconsideration, the court ultimately granted summary judgment on the WAC violation theory and denied summary judgment on the negligence theory. The court determined that Mr. Voss was qualified as an expert by his experience and training. Clerk's Papers (CP) at 522. The court also ruled that Mr. Voss's testimony was irrelevant because he related his personal view of where the power should have been cut rather than identify an industry standard of care governing that action. CP at 741-42.

At the request of Mr. Castillo, the trial court certified the question of its exclusion of Mr. Voss to this court but did not certify the summary judgment dismissal of the WAC violation theory of liability. This court accepted the certification of the witness exclusion ruling.

---

[1] Both Mr. Voss and defense expert Mr. Way described in general terms the "switching and clearance" protocol, a process by which high voltage lines are taken off-line in a coordinated effort between the workers in the field and controllers at headquarters who are communicating with each other. Clerk's Papers (CP) at 123, 279-80.

4

No. 32094-4-III
*Castillo v. Grant Co. PUD.*

ANALYSIS

Although there is only one issue presented by this appeal, it overlaps the summary judgment order dismissing the WAC violation theory and has been argued as an indirect attack on the summary judgment ruling.[2] The correct focus, in light of the certified issue, is on the trial court's evidentiary decision to strike Mr. Voss's testimony due to irrelevance.

As a general principle, a trial court's evidentiary rulings concerning expert testimony under ER 702 are reviewed for abuse of discretion. *State v. Greene*, 139 Wn.2d 64, 70, 984 P.2d 1024 (1999); *Moore v. Harley-Davidson Motor Co., Grp.*, 158 Wn. App. 407, 417, 241 P.3d 808 (2010). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

A claim in negligence is premised on the elements of duty, breach, injury, and causation. *Hansen v. Friend*, 118 Wn.2d 476, 479, 824 P.2d 483 (1992). Duty has three facets: (1) who owes the duty (2) to whom, and (3) what is the standard of care. *Gall v.*

---

[2] The argument suggests that summary judgment was granted due to lack of expert testimony to support the theory after Mr. Voss's testimony was stricken. We do not agree. The summary judgment argument focused on the inapplicability of the high voltage power line regulations, which Mr. Voss admitted were designed to protect linemen, to the situation at hand in which the customer was injured by low voltage. While lack of expert testimony on this topic would be an additional basis for dismissing that theory, it does not appear to have been the theory used by the trial court.

5

*McDonald Indus.*, 84 Wn. App. 194, 202, 926 P.2d 934 (1996). Here, James Voss was employed as an expert to establish the standard of care owed. Expert testimony is admissible if the specialized knowledge will assist the fact finder in understanding the evidence or determining a fact in issue. ER 702.

Mr. Castillo argues that the trial court applied hyper-technical requirements to Mr. Voss, requiring him to use a particular form for his opinion. We disagree. The trial court painstakingly reviewed—on two occasions—the deposition of Mr. Voss and his declarations. As the trial judge noted, "It is the substance of Mr. Voss' testimony and not its form which is dispositive." Report of Proceedings at 741. This was not a question of the judge requiring the expert to use magic words. Instead, the judge rightly required the expert to identify a standard of care that reflected general professional standards rather than the expert's own personal opinions. *See Leaverton v. Cascade Surgical Partners, PLLC*, 160 Wn. App. 512, 520, 248 P.3d 136 (2011); *White v. Kent Med. Ctr., Inc., P.S.*, 61 Wn. App. 163, 172, 810 P.2d 4 (1991).

The trial judge's careful review could discern no indication in the record that Mr. Voss ever identified an industry standard governing this situation. Instead, relying on the rules governing high voltage power operations for the protection of linemen, Mr. Voss asserted that Mr. Johnston and the PUD were required to follow similar procedures for

the low voltage situation presented in this case.[3] He never presented any authority for that view nor any basis for opining that the industry standards required a similar process. In short, he never identified a recognized industry standard of care rather than his own idiosyncratic standard of care. As the trial judge summarized the matter: "Mr. Voss describes what he believes, perhaps rightly, the generally accepted standard should be." CP at 742. A statement of what the standard should be is not a statement of what the standard is.

We conclude that the trial judge had a tenable basis for excluding Mr. Voss's testimony. His own view of the standard of care was irrelevant to the issues for the jury.[4] The court properly excluded Mr. Voss's testimony at trial.[5]

---

[3] Our courts have long recognized that a greater duty of care applies to high power voltage lines than to lower power voltage. *See Scott v. Pac. Power & Light Co.*, 178 Wash. 647, 649-50, 35 P.2d 749 (1934).

[4] The trial court opined that the parties probably did not need experts to try the remaining negligence claim. CP at 524. If that view of the case changes, Mr. Voss is qualified as an expert and presumably, if needed, could testify to an industry standard rather than his personal standard.

[5] Mr. Castillo also argues, and respondent addresses, a claim that Mr. Voss should have been allowed to testify that RCW 19.28.101 applies to this case and that Mr. Voss's testimony was necessary to interpret the statute. As the trial court was not presented with the issue and did not certify it to this court, we likewise will not address the argument. We note, however, that the applicability of a stature typically presents a legal issue for the bench and question whether expert testimony to interpret a statute ever would be relevant.

No. 32094-4-III
*Castillo v. Grant Co. PUD.*

Affirmed and remanded for trial.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, J.

I CONCUR:

_____
Brown, A.C.J.

8

32094-4-III

FEARING, J. — (Concurrence) I agree this reviewing court should affirm the trial court's dismissal of claims forwarded by Richard Castillo based directly on alleged violations of Washington regulations by the Grant County Public Utility District (PUD). I write this separate opinion because I disagree with some of the reasoning used by the majority in arriving at the affirmance. In particular, I disagree with the majority's ruling that the trial court did not err when striking the declaration of James Voss, Castillo's expert witness, on the ground that his declaration testimony was based on his idiosyncratic view or a normative opinion of the standard of care. I would not reach the validity of the striking of the declarations since the dismissal of the regulations claims can be affirmed on other grounds. An affirmation of the summary judgment dismissal moots the need to address the striking of the declarations.

The parties assume and write as if Richard Castillo asserts two distinct causes of action: (1) violation of Washington regulations, and (2) negligence. Washington no longer recognizes negligence per se. Under RCW 5.40.050, violation of a statute or administrative rule, except for a limited scope of statutes and regulations, does not constitute negligence per se. Instead a breach of a duty imposed by statute or regulation may be considered by the trier of fact as evidence of negligence.

The trial court dismissed, on summary judgment, Richard Castillo's cause of action "based on violations of the [Washington Administrative Code] WACs." Clerk's Papers (CP) at 801. Despite Washington no longer recognizing negligence per se, the trial court's dismissal of claims based on Washington regulations is a helpful ruling, since the parties now know that Richard Castillo may not argue to the jury that violation of a Washington regulation is evidence of negligence according to RCW 5.40.050.

In addition to being helpful, the trial court's granting of summary judgment on any negligence claim based directly on Washington regulations was also a correct ruling. Richard Castillo contended that Grant County Public Utility District violated WAC 296-45-085, WAC 296-45-095, WAC 296-45-135, WAC 296-45-325, and WAC 296-45-335 when employee John Johnston reenergized the circuit breaker. The five regulations respectively impose an obligation on lead workers to understand, inform employees of, and implement safety rules; impose a duty on lead workers to report hazardous conditions; impose an obligation on the electrical utility employer to conduct a job briefing before the start of a job; create safety standards for working on or near exposed energized parts; and establish protocol for deenergizing electrical lines and equipment for employee protection.

Chapter 296-45 WAC, from which all five regulations arise, applies only to protection of electrical utility employees. The scope of the chapter is defined in WAC 296-045-015, which provides in relevant part:

(6) Any rule, regulation or standard contained within this chapter, if subject to interpretation, shall be interpreted so as to achieve employee safety, which is the ultimate purpose of this chapter.

. . . .

(8) Neither the promulgation of these rules, nor anything contained in these rules shall be construed as affecting the relative status or civil rights or liabilities between employers and their employees and/or the employees of others and/or the public generally; nor shall the use herein of the words "duty" and "responsibility" or either, import or imply liability other than provided for in the industrial insurance and safety laws of the state of Washington, to any person for injuries due to negligence predicated upon failure to perform or discharge any such "duty" or "responsibility," but failure on the part of the employees, lead worker, or employer to comply with any compulsory rule may be cause for the department of labor and industries to take action in accordance with the industrial insurance and safety laws.

In his declarations filed in opposition to Grant County PUD's summary judgment motion and his deposition testimony filed in support of and in opposition to the motion, James Voss testified that the PUD violated the five regulations. Voss' testimony on purported violations of the regulations was irrelevant, since the court may decide as a matter of law the applicability of regulations. A trial court should dismiss a claim that a regulation is violated when the plaintiff seeks to apply the regulation outside its intended purpose. *Potter v. Wilbur-Ellis Co.*, 62 Wn. App. 318, 324-25, 814 P.2d 670 (1991). A statute or regulation may become the standard of conduct of a reasonable person only when the statute's or regulation's purpose is found to be exclusively or in part: (a) to protect a class of persons which includes the one whose interest is invaded, (b) to protect the particular interest which is invaded, (c) to protect that interest against the kind of harm which has resulted, and (d) to protect that interest against the particular hazard from

3

which the harm results. *Barrett v. Lucky Seven Saloon, Inc.*, 152 Wn.2d 259, 269, 96 P.3d 386 (2004). Richard Castillo does not seek review of Judge Knodell's summary judgment order dismissing claims based on the WACs on the ground that the regulations do not apply to injury of a member of the public.

The trial court struck the declarations of James Voss on the ground that his testimony is insufficient to establish a standard of care based on violations of the WACs and is thus irrelevant. I agree to the extent the trial court referred to Voss testifying to the legal extent of the regulations. But the majority of this court and the parties also maintain the trial court struck the declarations of James Voss on the ground that he failed to testify to an industry standard of care. Some of the trial court's oral rulings support this understanding. I disagree that James Voss failed to testify to an industry standard of care.

Grant County PUD claims, based mainly on deposition excerpts, that James Voss postulated a standard of care based on his learning as he worked in the electrical field. The PUD faults Voss for failing to cite to any written industry standards. The PUD highlights portions of Voss' deposition where he states: "I *think* the standard of care [is] . . ." and "It would be my opinion" as establishing Voss' opinions to be merely his personal view. CP at 346-47 (emphasis added). In his second declaration, Voss also averred: "It is my belief that PUD . . . violated the general standard of care apart from the precise fact patterns covered by the WAC. . . . It is my opinion that those same standards of same conduct are required by the general standard of care for the protection of members of the public such as Mr. Castillo." CP at 111.

4

The trial court agreed with the Grant County PUD and found that Voss' views on the standard of care were based solely on his own opinion. The trial court ruled Voss' testimony on the standard of care lacking because Voss never said that the standard of care to which he was testifying was "generally accepted in the industry" or "generally recognized." CP at 741-42. The trial court also concluded that Voss testified to a desired standard of care, rather than an actual industry standard of care.

Grant County PUD concedes that James Voss has vast experience in the electrical utility field and is qualified as an expert. Voss testified that there is a "recognized standard of care for a lineman." CP at 324. He testified that he bases his opinions on this recognized standard of care. He further declared that he taught those standard of care concepts in safety classes.

An expert must identify a standard of care that reflected general professional standards rather than the expert's own personal opinions. *Leaverton v. Cascade Surgical Partners, PLLC*, 160 Wn. App. 512, 520, 248 P.3d 136 (2011); *White v. Kent Med. Ctr., Inc. PS*, 61 Wn. App. 163, 172, 810 P.2d 4 (1991). James Voss' testimony readily met this standard for expert testimony. He may have inartfully phrased some opinions in words that connoted he spoke only to his personal views. But his testimony read as a whole shows his personal view is also the standard of care in the industry. Expert testimony on the standard of care does not have to be in standard of care terminology. *White v. Kent Med. Ctr., Inc. PS*, 61 Wn. App. at 172. We look instead to the substance of the allegations and the substance of what the expert brings to the discussion.

5

*Leaverton v. Cascade Surgical Partners, PLLC*, 160 Wn. App. at 520. To require experts to testify in a particular format would elevate form over substance. *Leaverton*, 160 Wn. App at 520.

Richard Castillo assigns error to the trial court purportedly precluding James Voss from testifying that the PUD violated its own internal safety standards and violated a purported standard found in RCW 19.28.101. I agree with the majority that the trial court never issued such a ruling. The trial court struck James Voss' declarations in opposition to the summary judgment motion. The trial court did not strike James Voss as a trial witness. Absent any further trial court ruling, James Voss may testify to negligence of the PUD and its employee and base his opinion testimony on a standard of care that may be found in various sources, including statutes, regulations, and internal policies.

I CONCUR:

_____
Fearing, J.

6