[No. 57390-0-I.   Division One.   December 18, 2006.]

DONALD R. SABEN ET AL., *Respondents*, v. SKAGIT COUNTY ET AL., *Appellants*.

*Thomas E. Seguine, Prosecuting Attorney*, and *A.O. Denny, Deputy*, for appellants.

*Jeffrey M. Eustis*, for respondents.

¶1 ELLINGTON, J. — Skagit County interpreted a zoning ordinance to deny a single-family residence permit. The applicants appealed. The county then reinterpreted the ordinance and agreed to grant the permit subject to certain conditions, and the applicants dismissed their appeal and met the conditions. Thereafter, however, the county reversed course and again denied the permit. The applicants again appealed and filed an action for damages.

¶2 The superior court ruled on summary judgment that the county was bound by its agreement with the applicants. Based on the evidence presented, the only reasonable inference is that the parties agreed to settle and the county breached the agreement. We affirm the superior court's order requiring issuance of the permits and a determination of damages.

## FACTS

¶3 Planning to retire and operate a Christmas tree farm, Don and Teri Saben agreed in August 2003 to purchase property in Skagit County, contingent on the availability of building permits for a home, shop, and garage. The property is in an area zoned "Industrial Forest—Natural Resource Lands" (IF-NRL). In September, the Sabens applied for permits to build an on-site septic sewage system, a garage, a detached shop, and a single-family residence. Within six weeks, the county issued three of the four permits, one each for the garage, septic system, and shop. The Sabens closed on the property.

¶4 Beginning in February 2004, the Sabens' plans began to falter. The planning and permit center denied the permit for their residence and revoked the permits for the garage, shop, and septic system. Citing Skagit County Code (SCC) 14.16.410(3), the county explained it could not issue the permits because the property was not within a fire district. The Sabens promptly appealed to the Skagit County hearing examiner, contending that a different ordinance, SCC 14.16.850(6), controlled and allowed the permit. The Sabens also filed a claim for damages with the Skagit county auditor.

¶5 The two ordinances facially conflict. SCC 14.16.850(6), which governs all zoning districts within Skagit County, allows single-family residences outside a fire district if owners take extra safety precautions.[1] On the other hand, SCC 14.16.410(3) applies solely to IF-NRL zones and

---

[1] At the time of these events, SCC 14.16.850(6) provided, in relevant part:

(a) Within any zoning district, building permits shall not be issued for residential and/or commercial structures that are not determined to be within an official designated boundary of a Skagit County Fire District.

(b) Exceptions:

. . . .

(iii) Outside of a fire district, a single-family dwelling or accessory building permit may be applied for if it meets all of the following or comparable alternative fire protection requirements as determined by the Fire Marshal . . . .

authorizes single-family residences only if they are inside fire districts.[2]

¶6  On March 9, 2004, while the appeal was pending, the Sabens' attorney spoke with the county's chief civil deputy prosecuting attorney. As a result of their conversation, the county agreed to reinstate the three revoked permits and grant the single-family residence permit so long as the Sabens complied with other provisions of the county code. In return, the Sabens agreed to withdraw their appeal before the hearing examiner.

¶7  Shortly thereafter, the Sabens withdrew their appeal, sold their home in Mount Vernon, and moved onto their new property in a recreational vehicle.

¶8  Before issuing the promised permit, however, the county turned to outside counsel for advice about interpretation of the two ordinances. Three months after the Sabens withdrew their appeal, the county took the position that SCC 14.16.410(3) was the controlling ordinance, and that in IF-NRL zones, no permits would be issued for single-family residences outside fire districts. On July 16, 2004, the county denied the Sabens' single-family residence permit. The county left the permits for the garage, shop, and septic system intact.

¶9  The Sabens appealed again and also filed a complaint in superior court, seeking issuance of the permits on theories of contract and estoppel, and seeking damages under 42 U.S.C. § 1983. The hearing examiner allowed the Sabens to present evidence of the agreement but lacked jurisdiction to address the settlement, estoppel, or damages claims. He held the county's interpretation of the statute not clearly erroneous and upheld denial of the permit. The board of commissioners affirmed.

¶10  The Sabens amended their superior court complaint, adding claims under the Land Use Petition Act

---

[2] SCC 14.16.410(3) provides that homes may be built in IF-NRL zones only when "(ii) The residence is located within the boundaries of a fire district."

(LUPA), chapter 36.70C RCW, and RCW 64.40.020.[3] On summary judgment, the superior court ordered the county to issue the permit and found the county liable for damages. The county appeals. We apply the usual standard of review on summary judgment.[4]

## ANALYSIS

¶11 *Breach of Settlement.* The Sabens contend their attorney settled with the county during a March 9, 2004 telephone conversation. The county denies it reached a settlement agreement and contends any question in that regard is for the jury.

¶12 The evidence is undisputed as to the following exchange. The day the attorneys spoke on the telephone, the prosecutor sent an e-mail to the Sabens' attorney:

This is to confirm our telephone conversation of earlier this morning, wherein I represented the following as the position of the County:

The three permits which were revoked are to be forthwith reinstated by the Planning and Permitting Center. . . .

The permitting process for the residence may immediately proceed. Obviously this does not assure them of a building permit; it does, however, presuppose that if they comply with all applicable code provisions a permit will be granted.

I understand that the notice of appeal before the Hearing Examiner may be cancelled. In fact, based upon our conversa-

---

[3] The LUPA and 42 U.S.C. § 1983 claims are not relevant to this appeal.

[4] We review a grant of summary judgment de novo, engaging in the same inquiry as the trial court and viewing the facts and the reasonable inferences from those facts in the light most favorable to the nonmoving party. *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 429, 38 P.3d 322, 327 (2002). Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c). "When a motion for summary judgment is supported by evidentiary matter, the adverse party may not rest on mere allegations in the pleadings but must set forth specific facts showing that there is a genuine issue for trial." *La Plante v. State*, 85 Wn.2d 154, 158, 531 P.2d 299 (1975).

tion, I already authorized [a Planning and Permit Center official] to do that. I will await written confirmation from you that your clients are abandoning the appeal.

I will also await notification from you concerning the claim that you filed against Skagit County on behalf of the Sabens based on chapter 64.40 RCW. Hopefully that will be forthcoming with a minimum of delay.

At this point, the Sabens may contact the Planning and Permit Center to proceed with the permitting process for the residence.

Clerk's Papers (CP) at 199.

¶13 On that same day, the planning and permit center sent the Sabens a letter, with a copy to the prosecutor:

Upon further review and discussion with legal counsel, it has been decided that [the garage, shop and septic system] are in compliance with applicable Skagit County Codes . . . . As such, your projects are hereby reinstated. . . .

Review of [the residence permit] application is once again underway. The following items still need to be addressed by you in order for the application to be approved.

CP at 163.

¶14 The items to be addressed were that the residence be an accessory to timber resource management activities and that the property have an individual well. Eight days later, Teri Saben responded, explaining how the couple was addressing the additional requirements. In conclusion, she wrote:

Having addressed these two points, we are assuming that our final permit will be issued as soon as our well has been drilled and approved. If we don't hear from you in the next week, we will assume that there will be no other hurdles for us to cross in order to obtain the final permit for which we have applied, and we have already informed our lawyer to cancel our appeal to your previous decision.

CP at 117.

¶15 The Sabens' attorney then wrote the prosecutor, seeking reimbursement of the expenses the Sabens had

incurred appealing the permit denials.[5] The prosecutor replied: "For settlement purposes only, the County has authorized me to offer your clients the sum of $4,000.00 as full and final settlement of any and all claims/actions related to the permitting. Naturally, they would be expected to sign a release, as well." CP at 64.

¶16 Settlement agreements are governed by general principles of contract law. *Stottlemyre v. Reed*, 35 Wn. App. 169, 171, 665 P.2d 1383 (1983). If the intention of the parties is plain and the terms of a contract are agreed upon, then a contract exists, even though no comprehensive writing is executed. *Id.* The only reasonable inference from the evidence before us is that a deal was made and the Sabens, at least, performed.

¶17 The county claims the "comply with all applicable code provisions" qualification in the March 9 e-mail included building within a fire district and characterizes the e-mail as no more than a statement of the county's interpretation of the ordinances. This characterization, considered in light of the planning and permit center's letter and the parties' subsequent actions, is untenable. The planning and permit center told the Sabens it had to meet two requirements, neither of which was building within a fire district. The Sabens withdrew their appeal and drilled a well. They had no reason to do either unless they were assured the county would issue their permits. Nor did the county have reason to negotiate a $4,000 settlement for the separate damages claim unless the underlying permit dispute was resolved. Although the county repeatedly asserts it never reached a settlement with the Sabens, it has presented no evidence providing any other explanations for its actions.

¶18 At oral argument, the county offered the explanation that once it issued the garage, shop, and septic permits, the

---

[5] The county alleges this letter is inadmissible hearsay. We do not rely on it for the truth of the matter asserted but only to create context for county's reply. The county also alleges other pieces of evidence are inadmissible. We do not rely on any of the contested evidence and thus do not need to address these contentions.

Sabens' appeal became moot, and no settlement was necessary. This argument overlooks the fact that the Sabens had also appealed the denial of their single-family residence permit. Their appeal was not moot.

¶19 The county next contends enforcing the settlement would be illegal and would conflict with public policy, because issuing the permits is contrary to the county's current interpretation of its ordinances. This argument overlooks the history of the county's interpretations.

¶20 The county reasonably interpreted its own ordinances. Then it reversed itself, reversed again, and yet again. It arrived at its final interpretation after the settlement agreement, after hiring outside counsel, and fully three months after the Sabens withdrew their appeal and complied with the planning and permit center's conditions. There was nothing illegal about the interpretation the county adopted when it made its agreement with the Sabens. Whatever public policy the county's interpretive uncertainties may express, it cannot trump the county's obligation to honor its settlement with the Sabens. *See, e.g., Anita Founds., Inc. v. ILGWU Nat'l Ret. Fund*, 902 F.2d 185, 189 (2d Cir. 1990) (" 'a settlement payment, made when the law was uncertain, cannot be successfully attacked on the basis of any subsequent resolution of the uncertainty' " (quoting *Moses-Ecco Co. v. Roscoe-Ajax Corp.*, 115 U.S. App. D.C. 366, 320 F.2d 685, 690 (1963))); *Lemon v. Kurtzman*, 411 U.S. 192, 207, 93 S. Ct. 1463, 36 L. Ed. 2d 151 (1973) (fact that state law was "untested" and later determined to be unconstitutional did not render contracts created under statute unenforceable).

¶21 *Damages.* The superior court ruled that the county acted arbitrarily and capriciously and the Sabens are entitled to damages under RCW 64.40.020. Actions are arbitrary and capricious if they represent willful and unreasoning decisions made without regard for facts and circumstances. *Cox v. City of Lynnwood*, 72 Wn. App. 1, 6, 863 P.2d 578 (1993). The question is whether the undis-

puted facts that establish the settlement also establish a basis for damages.

¶22 The county contends that a reasonable interpretation of its own ordinance cannot be arbitrary and capricious. But that does not describe what happened here. The county engaged in a remarkable series of mind changes, and even at the end, its decision allowing a permit for the garage but not the residence was an inconsistent amalgam of its previous interpretations.[6] But inconsistency was not the only problem. The county adopted an interpretation and made an agreement based upon it. Then, unilaterally, it disregarded that interpretation, disregarded its agreement, and disregarded the consequences to the Sabens, who acted in reliance upon it. We agree with the trial court that the county acted arbitrarily and capriciously.

¶23 We affirm the order requiring the county to issue the permits and finding the county liable under RCW 64-.40.020. We remand for determination of damages.

GROSSE and BAKER, JJ., concur.

---

[6] If the residence is not allowed by the ordinance, then neither is the garage, because a garage is a "usual accessory building," and the ordinance applies to "[s]ingle-family residential dwellings, together with the usual accessory buildings and uses." SCC 14.04.020, 14.16.410(3)(c).