IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | | |
|---|---|---|---|
| KENNETH EMERSON and KELLY EMERSON, a married couple, | ) ) ) | No. 73208-1-I | |
| Appellants, | ) ) | DIVISION ONE | |
| v. | ) ) ) | | |
| ISLAND COUNTY, a political subdivision of the State of Washington, | ) ) ) | UNPUBLISHED OPINION | |
| Respondent. | ) ) ) | FILED: March 28, 2016 | |

2016 MAR 28 AM 8: 45
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

BECKER, J. — Kenneth and Kelly Emerson applied for a permit to build an addition on to their Island County home. Island County issued the permit after lengthy wrangling over whether there was a wetland on the property. The Emersons filed suit seeking damages for the delay. They now appeal from an order granting summary judgment to the county. We affirm.

The purpose of summary judgment is to avoid a useless trial. Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 12, 721 P.2d 1 (1986). Summary judgment is properly granted when the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). Any doubt as to the existence of a genuine issue of material fact is resolved against the moving

party. Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co., 115 Wn.2d 506, 516, 799 P.2d 250 (1990). But the existence of a material fact cannot be hypothetical. "The adverse party must set forth specific facts showing there is a genuine issue for trial or have the summary judgment, if appropriate, entered against them." Seven Gables, 106 Wn.2d at 12-13.

We review the facts in the light most favorable to the Emersons. In late August 2010, Kenneth Emerson started constructing a sunroom addition to the Emersons' Camano Island home. He did not obtain a permit for this work. Someone who observed the construction anonymously notified Kelly Emerson's opponent in the then upcoming election for Island County Commissioner. A complaint, alleging damage to wetlands, reached the Island County Department of Planning and Community Development. The county dispatched an inspector to the Emerson property. No one was home. The inspector observed the framed addition at the back of the home and stapled a stop work order to the framing.

On August 31, 2010, Kenneth Emerson went to the county permitting office. He filled out and filed forms to obtain an after-the-fact building permit for the addition. On one of the forms, he stated that no wetlands existed on the Emerson property. On September 16 and September 23, 2010, the county sent letters stating that the county had information indicating the presence of a wetland on the Emersons' property.

The Emersons received a notice of violation letter on October 1, 2016. The letter offered the opportunity to come into compliance within 30 days by

submitting a wetland report. The letter indicated that failure to come into compliance would result in an enforcement order and civil fines.

The Emersons did not submit a wetland report. Feeling certain there were no wetlands on the property, they filed a lawsuit against individuals they believed were engaging in a misuse of power to discredit Kelly Emerson's political campaign. Later, they added the county as a defendant.

In November 2010, the county sent an enforcement order to the Emersons. The order advised the Emersons that they needed to submit a wetland report within 30 days. It stated that civil fines would be imposed if they failed to comply.

In January 2011, the county issued a supplemental enforcement order. The supplemental order repeated the demand for a wetland report and assessed a civil penalty of $37,000 against the Emersons.

In May 2011, the trial court entered summary judgment and dismissed the Emersons' lawsuit. The summary judgment was not appealed.

In June 2011, the Emersons retained SNR Co. to determine whether wetlands were on their property. SNR concluded no wetlands were present.

In July 2011, the Emersons submitted the SNR report to the county. The county expressed concern with the methodologies used by SNR and forwarded the report to the Department of Ecology for a second opinion.

In December 2011, the Emersons were told the SNR report did not comply with federal and state standards. The Emersons retained a second expert, Ed Kilduff, to perform a peer review of the SNR report. Kilduff criticized the

3

Department of Ecology for comments that "appear to deliberately misunderstand some of SNR's points for the purpose of manufacturing controversy."

The Emersons presented Kilduff's peer review to the county. Again, the county sought assistance from the Department of Ecology. In early 2012, the Department of Ecology concluded that Kilduff's peer review was unpersuasive because it lacked site specific information. The Department of Ecology recommended that state or county staff perform an onsite inspection at no cost to the Emersons. The inspection would facilitate a final determination regarding the presence or absence of regulated wetlands on the Emersons' property. The Emersons rejected the suggestion. The Emersons did not believe the state or the county could make an unbiased determination as to the existence of wetlands on their property.

In early 2013, the Emersons were repeatedly advised that the dispute could be resolved quickly and without cost if the county or the state was allowed to inspect the Emerson property. More than 10 letters and phone calls conveyed this recommendation to the Emersons. The Emersons refused to allow inspection.

On March 28, 2013, the county issued a second supplemental enforcement order. The second supplemental order asserted the violations listed in the initial enforcement order, noted the previous imposition of a $37,000 civil fine, and stated that a lien would be placed on the Emersons' property if the Emersons did not submit a proper wetland report. On March 29, 2013, the

county denied the Emersons' 2010 permit application. The Emersons appealed the denial and the second supplemental enforcement order.

In June 2013, the parties executed a settlement agreement. Under the terms of the agreement, the Emersons agreed to pay a reduced fine of $5,000, submit a wetland report that strictly complied with the Department of Ecology wetland manual, and withdraw their administrative appeal. The fine was to be paid within 30 days of the execution of the settlement agreement, and the wetland report was to be submitted within 60 days after execution. Upon withdrawal of the appeal, the county would return a substantial portion of the administrative appeal fees. Upon submission of the new wetland report, the county would process the permit application in good faith. The agreement allowed the county to obtain third party review of the new wetland report but only if the county reasonably determined that the report did not strictly comply with the Department of Ecology's wetland manual.

The Emersons paid the fine and withdrew their administrative appeal as required by the agreement. After retaining a third expert, the Emersons submitted a wetland report to the county on August 27, 2013.

On September 16, 2013, the Emersons e-mailed the county, stating that the county would be in default if a permit was not issued in 10 days. On September 23, 2013, the county asked the Emersons to clarify certain aspects of their wetland report.

On October 16, 2013, the Emersons submitted supplemental responses from their expert without waiving their previous claim of default. That same day,

the county renewed its request to inspect the Emerson property. On October 18, 2013, the Emersons rejected the request and declared a breach of the settlement agreement.

The Emersons initiated this lawsuit in November 2013. Their complaint demanded damages and injunctive relief under a variety of legal theories, including breach of the settlement agreement. The county forwarded the Emersons' wetland report and supplemental responses to the Department of Ecology approximately one week after the Emersons filed the complaint. The Department of Ecology determined that the Emersons' report did not comply with the wetland manual.

In October 2014, the county inspected the Emerson property under CR 34(a)(2), the discovery rule that authorizes a litigant to request permission for entry onto designated land possessed by the responding party. No wetlands were found. The county issued the building permit.

The parties agreed to arbitration of the breach of contract claim. The trial court dismissed all the other claims on summary judgment. The Emersons moved for reconsideration. Their motion was denied.

The Emersons ask this court to reinstate their claims under RCW 64.40.020, under the takings clause of the Washington Constitution, under 42 U.S.C. § 1983 for substantive due process violations, and for common law fraud.

## RCW 64.40.020

RCW 64.40.020 grants permit applicants a limited cause of action for damages if an agency's permitting actions are arbitrary, capricious, unlawful, or

otherwise exceed its lawful authority, or if an agency fails to act within time limits established by law. See Birnbaum v. Pierce County, 167 Wn. App. 728, 734, 274 P.3d 1070 (2012).

> **Applicant for permit—Actions for damages from governmental actions.**
>         (1) Owners of a property interest who have filed an application for a permit have an action for damages to obtain relief from acts of an agency which are arbitrary, capricious, unlawful, or exceed lawful authority, or relief from a failure to act within time limits established by law: PROVIDED, That the action is unlawful or in excess of lawful authority only if the final decision of the agency was made with knowledge of its unlawfulness or that it was in excess of lawful authority, or it should reasonably have been known to have been unlawful or in excess of lawful authority.
>         (2) The prevailing party in an action brought pursuant to this chapter may be entitled to reasonable costs and attorney's fees.
>         (3) No cause of action is created for relief from unintentional procedural or ministerial errors of an agency.
>         (4) Invalidation of any regulation in effect prior to the date an application for a permit is filed with the agency shall not constitute a cause of action under this chapter.

RCW 64.40.020. Any action brought under chapter 64.40 RCW "shall be commenced only within thirty days after all administrative remedies have been exhausted." RCW 64.40.030.

The county's motion for summary judgment argued that the Emersons failed to exhaust their administrative remedies. The county also sought dismissal under the 30-day limitations period.

The Emersons responded that they had no obligation to exhaust their administrative remedies because the county had not issued a final order when they brought this lawsuit, there were no administrative remedies available to them under the settlement agreement, and the county lacked the institutional

competence to resolve the dispute. The Emersons cited <u>Saben v. Skagit County</u>, 136 Wn. App. 869, 152 P.3d 1034 (2006).

The trial court dismissed the Emersons' RCW 64.40 claim for failure to exhaust administrative remedies.

The Emersons argue, citing <u>Saben</u>, that there is no exhaustion requirement under RCW 64.40 when a claim stems from a settlement agreement. That is not the holding of <u>Saben</u>.

In <u>Saben</u>, Skagit County denied the Sabens a permit. The Sabens filed an administrative appeal. <u>Saben</u>, 136 Wn. App. at 872. It was agreed that Skagit County would issue the permit if the Sabens complied with certain laws and withdrew their appeal. The Sabens complied, but Skagit County refused to issue the permit. The Sabens filed another administrative appeal and brought an action for damages under RCW 64.40. <u>Saben</u>, 136 Wn. App. at 873-74. The superior court granted summary judgment for the Sabens, ruling that the county was bound by its settlement agreement to issue the permit and finding the county liable for damages. This court affirmed. "The county adopted an interpretation and made an agreement based on it. Then, unilaterally, it disregarded that interpretation, disregarded its agreement, and disregarded the consequences to the Sabens, who acted in reliance upon it." <u>Saben</u>, 136 Wn. App. at 878.

Nothing in <u>Saben</u> excuses a plaintiff from the statutory requirement to exhaust administrative remedies before bringing suit. The exhaustion requirement established by RCW 64.40.030 was not at issue.

8

The Emersons alternatively contend that their claim is supported by Smoke v. City of Seattle, 132 Wn.2d 214, 937 P.2d 186 (1997). In Smoke, the city of Seattle sent a letter (the Mills letter) denying land use and building permits to a set of plaintiffs. The letter informed the plaintiffs of their option to apply for a legal building site letter or a formal building cite code interpretation by the director. Neither a building site letter nor an interpretation by the director was a required component of the city's application process. Smoke, 132 Wn.2d at 218. The plaintiffs brought an action against the city under RCW 64.40 without seeking a building site letter or a director's interpretation. Smoke, 132 Wn.2d at 220.

The case reached our Supreme Court, where the issue was whether the plaintiffs could claim damages under RCW 64.40. The court first held that the statute unambiguously requires exhaustion of administrative remedies. Smoke, 132 Wn.2d at 221-22. The next question was whether the plaintiffs had an unexhausted remedy. "No exhaustion requirement arises . . . without the issuance of a final, appealable order. Thus, we must first determine whether the Mills letter constituted a final decision by the City." Smoke, 132 Wn.2d at 222 (citation omitted). The court concluded that the plaintiffs did not have to pursue a site letter or a director's interpretation because neither option could have reversed the decision to deny the permits. Because there was no further administrative remedy after the Mills letter, the Mills letter was a final and appealable decision denying the permits. Smoke, 132 Wn.2d at 226-27.

The Emersons contend that by entering into the settlement agreement, they became like the plaintiffs in Smoke in that they had no further administrative remedies. This case is factually unlike Smoke because the Emersons did not obtain a final, appealable order. They withdrew their appeal.

The county contends that if the Emersons wanted to pursue a remedy under RCW 64.40 in addition to pursuing a breach of contract action, the Emersons could have either reactivated their appeal of the building permit denial or sought a new appeal of the wetlands inspection condition that the county was imposing. The Emersons respond that there was no way for them to reactivate their appeal or seek a new appeal because the terms of the settlement agreement did not permit them to pursue an administrative remedy. They rely on the venue provision stating that Island County Superior Court would be the venue for any "action" arising out of the agreement:

> **Governing Law and Venue.** This agreement shall be governed by and interpreted in accordance with the laws of the State of Washington. The venue for any action arising out of this Agreement shall be in the Superior Court of the State of Washington, in and for Island County.

The Emersons contend that the venue provision amounted to an agreement to exchange administrative remedies for a judicial action.

Settlement agreements are governed by general principles of contract law. Saben, 136 Wn. App. at 876. The touchstone of contract interpretation is the parties' intent. Tanner Elec. Coop. v. Puget Sound Power & Light Co., 128 Wn.2d 656, 674, 911 P.2d 1301 (1996). A settlement agreement listing the superior court as the venue for an "action" does not evidence an intent to waive

10

the exhaustion requirement in RCW 64.40.030. The venue provision does not refer to the administrative process or exhaustion of administrative remedies.

The Emersons did not obtain a final, appealable, administrative order denying their permit either before or after bringing this lawsuit. By bringing suit before obtaining a final, appealable order, the Emersons deprived the county of the opportunity to correct its own mistakes, which is "one of the primary purposes of the doctrine to exhaust administrative remedies." Smoke, 132 Wn.2d at 226. We conclude the Emersons' RCW 64.40 claim was properly dismissed for failure to exhaust administrative remedies.

TAKINGS

The Emersons contend that they have a triable takings claim against the county under the Washington Constitution.

**Count 3: Takings under State Constitution**

38. Plaintiffs reallege paragraphs 1-26 as if fully set forth herein.

39. The Washington State Constitution provides, "No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner." Const. Art. I, § 16.

40. By virtue of the actions complained above the Department has taken or damaged the Emersons' Property without just compensation.

41. As a result of this taking, the Emersons have suffered significant damage in an amount to be proven at trial.

The county's motion for summary judgment argued that a permitting delay cannot amount to a constitutional taking. The county also argued that no taking occurred because the Emerson property did not suffer total economic deprivation.

11

In response, the Emersons argued only that the Washington Constitution provides "more protection" than its federal counterpart. The entirety of the Emerson's response regarding their takings claim states:

> The Emersons' third count, "Takings under the state Constitution," seeks damages for Defendant's violation of Article I, § 16 of the Washington State Constitution. Defendant has moved for summary judgment of a claim for takings under the Federal constitution—a claim that is not before the court. Defendant provides no authority or discussion regarding the Emersons' claim under the State constitution, which, under well settled case law, affords citizens with more protection than that guaranteed by the Federal Constitution. See, e.g., [Manufactured] Hous[.] Cmtys. of Wash. v. State, 142 Wn.2d 347, 360-61, 13 P.3d 183 (2000). Accordingly, Defendant has failed to meet its burden and the motion must be denied.

The Emersons offered no other basis for denying the county's motion with regard to their takings claim. The county pointed out in its reply that the federal constitution provides at least as much protection in the context of a regulatory taking.

The Emersons argue on appeal that the trial court impermissibly dismissed their takings claim under a theory not originally briefed in the county's opening memorandum. They cite White v. Kent Medical Center, Inc., 61 Wn. App. 163, 810 P.2d 4 (1991).

This case is not controlled by White. The county's reply did not present new theories for summary judgment. The problem for the Emersons is that they did not substantively respond to the county's motion to dismiss the takings claim. Because the Emersons failed to provide any substantive argument to demonstrate a genuine issue of material fact under CR 56, the trial court properly dismissed the takings claim.

12

## SUBSTANTIVE DUE PROCESS

The Emersons further contend that they have a triable substantive due process claim under 42 U.S.C § 1983, based on the county's delay in processing their application pursuant to the settlement agreement.

"Arbitrary or irrational refusal or interference with processing a land use permit violates substantive due process." Mission Springs, Inc. v. City of Spokane, 134 Wn.2d 947, 970, 954 P.2d 250 (1998). When executive action like a permitting decision is at issue, only egregious official conduct can be said to be arbitrary in the constitutional sense. Official conduct is arbitrary in the constitutional sense if it amounts to an abuse of power lacking any reasonable justification in the service of a legitimate governmental objective. Shanks v. Dressel, 540 F.3d 1082, 1088 (9th Cir. 2008). If it is at least fairly debatable that the county's conduct is rationally related to a legitimate governmental interest, there has been no violation of substantive due process. Halverson v. Skagit County, 42 F.3d 1257, 1262 (9th Cir. 1994).

When all inferences are drawn in the Emersons' favor, the county's actions in reprocessing the Emersons' application do not amount to a substantive due process violation. The county's actions were directly related to determining whether wetlands were on the Emerson property. We affirm the dismissal of the Emersons' substantive due process claims.

13

## FRAUD

The Emersons' complaint alleges that the county fraudulently induced them to enter into a settlement agreement the county did not intend to honor. They contend the court erred in dismissing this claim.

To state a claim for fraud, a plaintiff must satisfy the following nine elements:

> (1) representation of an existing fact, (2) materiality, (3) falsity, (4) the speaker's knowledge of its falsity, (5) intent of the speaker that it should be acted upon by the plaintiff, (6) plaintiff's ignorance of its falsity, (7) plaintiff's reliance on the truth of the representation, (8) plaintiff's right to rely upon the representation, and (9) damages suffered by the plaintiff.

W. Coast, Inc. v. Snohomish County, 112 Wn. App. 200, 206, 48 P.3d 997 (2002).

In the settlement agreement, the county promised to issue a permit to the Emersons only if they submitted a wetland report that strictly followed certain methodologies. The parties agreed to a disclaimer clause stating that nothing in the agreement should be construed as a guarantee of approval or as constituting a "representation" by the county:

> **Disclaimer by Department.** Nothing in this Agreement shall be construed as a waiver by the County of any permit requirements applicable to the Emersons construction activities on the Property pursuant to the County Code or other applicable laws, rules, or regulations. Nothing in this Agreement shall be construed as guaranteeing the availability of any permits or approvals regarding said activities. Nothing in this Agreement shall be construed as constituting a representation of any kind or nature by the County, or any official or employee thereof.

The Emersons contend that the county should not be allowed to contract around its duty to be truthful in negotiations because this "would sanction

14

fraudulent and generally deceptive behavior." The Emersons cite no authority for this argument. They do not explain how a court can enforce a written agreement as if it guaranteed a permit when the agreement expressly states it is not a guarantee. Also, the Emersons overlook the principle that promises of future performance are not representations of existing fact. See W. Coast, 112 Wn. App. at 206.

The Emersons have not created an issue of material fact to establish that the county made a materially false representation. They fail to show why the disclaimer does not control. The trial court properly granted summary judgment on the Emersons' claim of fraudulent inducement.

Affirmed.

WE CONCUR: