
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| VICTORIA ANN HOSTETTER, | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | No. 76054-8-I |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| MICHAEL RICHARD HANSON, | ) | |
| Appellant. | ) | FILED: November 20, 2017 |

DWYER, J. — Michael Hanson appeals from the trial court's order concluding that he and Victoria Hostetter were in a committed intimate relationship (CIR) and awarding him certain real property subject to a $22,500 judgment lien in favor of Hostetter. On appeal, Hanson contends that substantial evidence does not support the trial court's factual findings. Hanson also contends that the trial court erred by applying the wrong burden of proof to his statute of limitation defense and by refusing to treat a written agreement between the parties as an enforceable settlement agreement. Finding no error, we affirm.

I

Hanson and Hostetter began a relationship in 1999. The parties each own real property located in Sumas, Washington. Hanson owns the "cabin" property, Hostetter owns the "ranch" property, and together the parties purchased the

"orchard" property. Hanson and Hostetter were never married and never had children together. Hanson has a son from a previous relationship who often lived with Hanson and Hostetter.

Hanson and Hostetter lived separately and together at various times throughout their relationship. The parties continued to have an intimate relationship even when spending time in separate residences. Hanson and Hostetter relied nearly exclusively on cash for all purchases, including the purchase of the orchard property. There is no evidence regarding the income source of the parties—they produced no pay stubs, no W-2s, and no tax returns that accurately captured income. However, cash flow was sufficient to allow the parties to purchase multiple houses, animals, personal property, and to perform maintenance and upkeep on more than one residence. The parties kept cash buried in black plastic tubes around the properties. The circumstances of the parties' arrangement made it impossible to establish any sort of segregation of funds.

The parties offered conflicting testimony as to when their relationship ended. Hanson testified that the relationship ended on July 27, 2010 after he returned from Europe. Hostetter testified that she ended the relationship on Valentine's Day 2011. Each party offered testimony from family members to establish that their version of events was correct. The conflicting testimony of the parties, biases of the family members, and lack of other evidence made it impossible to establish a definite date for the end of the relationship.

In September 2011, Hanson and Hostetter engaged in a series of mediation sessions. Following mediation, Hanson and Hostetter handwrote and signed a document that Hanson now characterizes as a "settlement agreement." The writing purports to divide certain personal property between the parties and lists certain tasks that each party will complete. The writing states that Hostetter shall have no rights to the cabin or orchard properties.

Following trial, the trial court found that Hanson and Hostetter were in a relationship that began in 1999 or 2000 and ended sometime within the three years preceding the filing of the petition. The trial court found that the parties were intimate and intended a common household as a couple. The trial court found that the parties pooled their resources for joint projects and made joint purchases of real and personal property. Accordingly, the trial court concluded that the parties were in a CIR.

The trial court also found that the written document signed by both parties was a preliminary agreement. The trial court noted that the writing did not address credit card or other debt, did not address the parties' vehicles, and omitted mention of a great amount of the personal property in dispute. Accordingly, the trial court found that the writing was not an enforceable settlement agreement.

The trial court ruled that Hanson and Hostetter would each retain all personal property in their possession and that Hostetter would retain the vehicle that was given to her as a birthday present. The trial court ruled that the cabin property was Hanson's separate property. The trial court ruled that the parties

purchased the ranch property during the CIR but that Hanson waived any interest in the property. Finally, the trial court ruled that the parties purchased the orchard property during the CIR, that title to the property was placed in Hostetter's name, and that Hostetter contributed $22,000 to the purchase price of the property. The trial court awarded the orchard property to Hanson, subject to a $22,500 judgment lean in favor of Hostetter.[1] Hanson appeals.

## II

Hanson contends that the trial court erred by concluding that he and Hostetter were in a CIR and by awarding Hostetter part of his separate property. This is so, he asserts, because the trial court's factual findings are not supported by substantial evidence. We disagree.

We review a trial court's factual findings for substantial evidence. In re Parentage of G.W.-F., 170 Wn. App. 631, 637, 285 P.3d 208 (2012). Evidence is substantial where, viewed in the light most favorable to the prevailing party, a rational finder of fact could find the fact in question by a preponderance of the evidence. In re Dependency of M.P., 76 Wn. App. 87, 90-91, 882 P.2d 1180 (1994). We defer to the trier of fact to resolve conflicting testimony, evaluate the persuasiveness of evidence, and assess the credibility of witnesses. G.W.-F., 170 Wn. App. at 637. We review a trial court's conclusions of law de novo to determine if they are supported by the findings of fact. G.W.-F., 170 Wn. App. at 637.

---

[1] The trial court found that the value of the property had increased by $2,000, making the total value of Hostetter's contribution equal to $22,500.

A

Hanson first contends that substantial evidence does not support the trial court's factual findings concerning the existence of the CIR.

Washington law does not recognize the existence of common law marriages. In re Pennington, 142 Wn.2d 592, 600, 14 P.3d 764 (2000). "The CIR doctrine is a judicially created doctrine used to resolve the property distribution issues that arise when unmarried people separate after living in a marital-like relationship and acquiring what would have been community property had they been married." In re Kelley & Moesslang, 170 Wn. App. 722, 732, 287 P.3d 12 (2012).

The determination of whether a CIR existed depends on the facts of each case. Our Supreme Court has announced five nonexclusive factors for courts to consider when making such a determination: "'continuous cohabitation, duration of the relationship, purpose of the relationship, pooling of resources and services for joint projects, and the intent of the parties.'" Pennington, 142 Wn.2d at 601 (quoting Connell v. Francisco, 127 Wn.2d 339, 346, 898 P.2d 831 (1995)). "These characteristic factors are neither exclusive nor hypertechnical. Rather, these factors are meant to reach all relevant evidence helpful in establishing whether a [CIR] exists." Pennington, 142 Wn.2d at 602 (citing Connell, 127 Wn.2d at 346).

Here, the trial court heard testimony that Hanson and Hostetter began dating sometime in 1999 and that they had moved in together by the summer of 2000. The trial court heard testimony that Hanson and Hostetter worked together

to build and maintain the cabin property. The trial court heard testimony that Hostetter and Hanson purchased personal property together and paid bills together. Hostetter, Hanson, and Hanson's son were on a family health plan together. After Hanson and Hostetter finished building the cabin property and purchased the orchard property, they split their time between the three properties. Hanson testified that he continued to have an intimate relationship with Hostetter after the cabin was built and the orchard property was purchased. Although Hanson and Hostetter provided conflicting testimony as to the precise date that the relationship ended, the trial court heard testimony establishing that the relationship lasted at least 10 years.

The trial court found that the parties cohabitated continuously beginning in 1999 or 2000, that they were intimate and intended a common household as a couple, and that they pooled their resources for joint projects, maintained households together, made joint purchases of personal property, and each contributed toward big purchases. In light of these findings, the trial court concluded that the parties were in a CIR that began sometime in 1999 or 2000.

Hanson first contends that substantial evidence does not support the trial court's finding that the parties cohabitated. Hanson asserts that cohabitation requires the parties to continuously live in the same house.[2] Because he did not

_____

[2] Hanson relies on In re Marriage of Byerley, 183 Wn. App. 677, 689, 334 P.3d 108 (2014), in support of his assertion that continuous cohabitation is a necessary condition for a CIR. But the issue before the court in Byerley was not whether the parties were in a CIR—they agreed that they were—but, rather, whether the house in which they resided was community property. 183 Wn. App. at 686-87. The court held that the house was not acquired during the CIR because a CIR "cannot . . . commence prior to the date the parties begin living together." Byerley, 183 Wn. App. at 689. Byerley does not support Hanson's assertions.

spend every night with Hostetter, Hanson avers, he was not cohabitating with her. But Hanson's own testimony reveals that the parties stopped living exclusively in the same house in 2006 not because they were no longer in a relationship but, rather, because "[o]ne of us had to stay at the other property." Hanson testified that he and Hostetter continued an intimate relationship after they purchased the ranch property, spending several nights a week together. The trial court's finding is supported by substantial evidence.

Hanson next contends that substantial evidence does not support the trial court's finding that the relationship ended sometime within the three years preceding the filing of the petition. Hanson asserts that the trial court improperly shifted the burden to him to establish when the relationship ended. But Hanson confuses the burden of establishing the existence of the CIR—which rests on the petitioner—with the burden of establishing that the petition is time barred. Here, the trial court found that, although the evidence did not support a *particular* date that the relationship ended, the evidence did support a finding that the relationship ended within the three years preceding the filing of the petition. The trial court's finding is supported by the testimony presented at trial.

Hanson next contends that the trial court failed to make any findings as to the purpose of the relationship. But the trial court explicitly stated in its oral ruling that "the parties operated with a general purpose to operate and keep a common household and to reside together." The trial court's finding is supported by the testimony at trial.

- 7 -

Hanson also contends that there was insufficient evidence to support the trial court's finding that Hanson and Hostetter "pooled their resources for joint projects and to maintain households together." As discussed herein, neither party was able to produce bank statements, W-2s, tax returns, or any other form of documentation that could adequately explain their income or expenses. This is reflected in the trial court's finding that "[t]he genesis of the cash used during the parties' relationship cannot be traced and it is impossible to segregate whose cash was used for what purchases or payments." Rather, the trial court relied on the testimony given by Hanson and Hostetter to determine whether resources were pooled. The trial court heard and credited testimony that Hostetter contributed financially to the purchase of real and personal property. Hanson's assertions that the trial court should not have believed Hostetter are without merit.

Finally, Hanson contends that the trial court's finding that he and Hostetter intended to be in a CIR is not supported by substantial evidence. This is so, he asserts, because neither he nor Hostetter intended to marry. But the trial court never found that Hanson and Hostetter intended to marry. Rather, the trial court found that Hanson and Hostetter "were intimate and intended a common household as a couple." Intent to marry is not a necessary precondition for a CIR—the relevant consideration is whether the parties "mutually intended to be in a [CIR]." Pennington, 142 Wn.2d at 606. The trial court's finding is supported by substantial evidence.

The trial court's factual findings are supported by substantial evidence. Those findings in turn support the trial court's conclusion that Hanson and Hostetter were in a CIR. There was no error.

B

Hanson next contends that the trial court erred by awarding him the orchard property subject to a $22,500 judgment lean in favor of Hostetter. This is so, he asserts, because the trial court's findings of fact were not supported by substantial evidence.

After a trial court has determined that a CIR exists, the court then evaluates the interest that each party has in the property acquired during the relationship. Then, the trial court makes a just and equitable distribution of such property. Pennington, 142 Wn.2d at 602. "While property acquired during the [CIR] is presumed to belong to both parties, this presumption may be rebutted." Pennington, 142 Wn.2d at 602. "If the presumption of joint ownership is not rebutted, the courts may look for *guidance* to the dissolution statute, RCW 26.09.080,[3] for the fair and equitable distribution of property acquired during the [CIR]." Pennington, 142 Wn.2d at 602. We review a trial court's distribution of

---

[3] RCW 26.09.080 instructs courts to consider all relevant factors including, but not limited to:
(1) The nature and extent of the community property;
(2) The nature and extent of the separate property;
(3) The duration of the marriage or domestic partnership; and
(4) The economic circumstances of each spouse or domestic partner at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse or domestic partner with whom the children reside the majority of the time.

property for an abuse of discretion. Brewer v. Brewer, 137 Wn.2d 756, 769, 976 P.2d 102 (1999).

Here, the trial court heard testimony from Hostetter that she provided $22,000 for the purchase of the orchard property. The trial court heard testimony that the purchase price of the orchard was $88,000. The trial court also heard expert testimony that the orchard appraised for $90,000 as of November 6, 2015.

The trial court found that the cabin property belonged to Hanson, that Hanson made no claim as to the ranch property, and that the orchard property was purchased jointly by the parties and was placed in Hostetter's name for tax purposes. The trial court found that the orchard property had increased in value by $2,000 since its purchase price and that Hostetter had contributed $22,000 to the purchase of the orchard property. Accordingly, the trial court awarded Hanson the orchard property subject to a $22,500 judgment in favor of Hostetter.

On appeal, Hanson contends that the trial court's factual findings are not supported by substantial evidence. Hanson asserts that Hostetter did not contribute to the purchase of the orchard property at all. Hanson produced two cashier's checks totaling $81,000 in support of his assertion. Hanson now states that he paid cash for the remainder of the purchase price. But, as discussed herein, the trial court heard extensive testimony that Hanson and Hostetter pooled their money and purchased nearly everything in cash. The trial court did not have the benefit of financial documentation before it and, thus, relied on the testimony of the parties to make its findings.

Although Hanson testified that he paid for the orchard property himself, Hostetter testified that she contributed $22,000 toward the property. The trial court found Hostetter's testimony credible and awarded her the amount that she contributed, adjusted for the increase in value. There was no abuse of discretion.

III

Hanson next contends that the trial court erred by not crediting his statute of limitation defense.

The equitable doctrine of CIR is subject to a three-year statute of limitation. The petitioner must sue to establish the existence of the CIR within three years of the end of the relationship. Kelley, 170 Wn. App. at 737. The statute of limitation is an affirmative defense and the defendant carries the burden of proof. Rivas v. Overlake Hosp. Med. Ctr., 164 Wn.2d 261, 267, 189 P.3d 753 (2008) (citing CR 8(c)). The burden shifts to the plaintiff if he or she alleges that the statute was tolled and does not bar the claim. Rivas, 164 Wn.2d at 267.

Here, Hostetter filed the petition to determine the validity of the CIR on August 7, 2013. On February 22, 2016, Hanson moved to amend his response to the petition to include the affirmative defense that the petition was time barred. The motion was granted.

At trial, Hanson testified that his relationship with Hostetter ended on July 27, 2010. Hanson argued that, by the time that Hostetter sued to establish the existence of the CIR, the statutory limitation period had run. On the other hand,

Hostetter testified that the relationship did not end until Valentine's Day 2011. Each party offered testimony from family members in support of their assertions.

The trial court found that the conflicting evidence did not support a particular date of separation. However, the trial court found that there *was* evidence that the relationship continued beyond the date that Hanson identified as the end of the relationship. The trial court noted that it was Hanson's burden to prove that the statute of limitation had run by the time that the petition was filed. The trial court found that Hanson had failed to meet his burden of proving that the petition was barred by the statute of limitation.

On appeal, Hanson contends that the trial court erred by failing to shift the burden of proof to Hostetter. This is so, he asserts, because Hostetter alleged that the statute of limitation was tolled.

Hanson's assertion is puzzling. Hostetter argued at trial—and maintains on appeal—that the relationship ended in February 2011. Rather than asserting that the statute was tolled, Hostetter asserted that the petition was filed within the three-year time limit. This does not implicate tolling and the burden does not shift to Hostetter.

As the petitioner, Hostetter had the burden of establishing the existence of the CIR, including when the relationship ended. The trial court found that a CIR existed and that, although the exact date of the end of the CIR could not be established, the relationship ended sometime within the three years preceding the filing of the petition. The trial court's finding is supported by substantial evidence. Given the court's factual finding, the burden of establishing that the

petition was time barred properly rested on Hanson. He failed to meet that burden. There was no error.

IV

Finally, Hanson contends that the trial court erred by refusing to enforce the written agreement between the parties.

Settlement agreements are governed by general principles of contract law. Saben v. Skagit County, 136 Wn. App. 869, 876, 152 P.3d 1034 (2006). "A valid contract requires a meeting of the minds on the essential terms." Evans & Son, Inc. v. City of Yakima, 136 Wn. App. 471, 477, 149 P.3d 691 (2006). "Mutual assent to definite terms is normally a question of fact for the fact finder." P.E. Sys., LLC v. CPI Corp., 176 Wn.2d 198, 207, 289 P.3d 638 (2012). In determining whether informal writings are sufficient to establish a contract when the parties contemplated signing a more formal written agreement, Washington courts consider whether "(1) the subject matter has been agreed upon, (2) the terms are all stated in the informal writings, and (3) the parties intended a binding agreement prior to the time of the signing and delivery of a formal contract." Morris v. Maks, 69 Wn. App. 865, 869, 850 P.2d 1357 (1993).

Here, Hanson and Hostetter produced a written document following a series of mediations. This writing purports to divide several assets between the parties. For example, the writing provides that Hostetter "has no rights to cabin or [the orchard]." The writing also contemplates that each party will complete a variety of tasks. For example, the writing states that Hostetter will "do the railings on deck" and that Hanson will cover Hostetter's health insurance until October

- 13 -

31, 2011. The writing does not contain any references to the division of debt and neglects to divide up certain personal property, such as the parties' vehicles. After the parties signed the writing, Hostetter signed a quitclaim deed to the orchard property.

At trial, Hostetter testified that the written agreement was a list that the parties made to "start to resolve" their differences. Hostetter testified that the writing did not include all of the parties' mutually owned assets or debts and that it did not list the vehicles or the mortgage on the ranch property. Hostetter testified that the parties intended to review the writing with their attorneys and continue mediation to reach a final agreement. Hostetter also testified that the parties' conduct following the creation of the writing deviated from the conduct contemplated by the writing. For example, Hostetter testified that Hanson refused to address half of the things on the list and refused to move forward with mediation. Finally, Hostetter testified that she signed the quitclaim deed in an effort to continue negotiations.[4]

The trial court made a factual finding that the writing was a preliminary agreement, not a complete settlement. The trial court found that the writing contemplated a division of tasks to be done as well as a division of some property but that it did not address with sufficient particularity all of the issues and all of the property in dispute. The trial court found that the writing did not address the mortgage on the ranch, omitted a substantial amount of personal property,

---

[4] Hanson offered little testimony on the written agreement. Hanson testified that the writing was signed following mediation and that he believed that the writing was a final agreement between the parties.

and was still contingent upon the completion of certain tasks. The trial court found that the writing was a preliminary agreement and that the parties did not intend for it to be enforceable. Accordingly, the trial court concluded that the writing was not enforceable.

The trial court's finding that the written agreement was a preliminary agreement is supported by substantial evidence. The writing divides up a mixture of personal and real property as well as a number of uncompleted tasks. The writing omits material items in dispute such as the parties' vehicles, the mortgage on the ranch property, Hostetter's interest in the orchard property, and the debt owed by both parties. Although Hanson contends that both parties intended the writing to be the final settlement agreement, he does not explain how negotiations between the parties could have been concluded when the writing omits material terms still in dispute. Given the trial court's finding that the parties had not mutually assented to the material terms, the court's conclusion that the written document was unenforceable is sound. There was no error.[5]

Affirmed.

We concur:

---

[5] Hanson requests an award of attorney fees and costs pursuant to RCW 4.84.185 for defending against a frivolous lawsuit. Because we affirm the trial court's order, his request is denied.