IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CLARITY CAPITAL MANAGEMENT CORPORATION, a Washington corporation, | No. 82022-2-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| ARETHA RYAN, an individual; TEDDY J. NEWMAN, an individual; and SALISH WEALTH MANAGEMENT, INC., a Washington corporation, | |
| Respondents. | |

SMITH, J. — Clarity Capital Management Corporation appeals the trial court's order granting summary judgment in favor of Aretha Ryan, Teddy Newman, and Salish Wealth Management Inc. Clarity claims that the court erred by granting summary judgment on all of its claims, by denying its motion to continue the summary judgment hearing, by denying its motion for reconsideration, and in its award of attorney fees to the respondents. Finding no error, we affirm.

FACTS

Multop Financial was a financial planning company in Bellingham, Washington, owned by Phillip Multop. Matthew Bumstead is the president and owner of Clarity, a financial services firm which sought to acquire Multop Financial's assets. In October 2019, Clarity and Phillip Multop executed a

Citations and pin cites are based on the Westlaw online version of the cited material.

purchase and sale agreement (PSA). The PSA sold Multop Financial's client accounts and related assets to Clarity and gave Clarity the right to use the name "Multop Financial" for two years. It also assigned a contract between Multop Financial and a separate consulting firm to Clarity.

Ryan and Newman were financial advisors at Multop Financial. As employees, they each signed an employee manual that detailed employment policies and benefits. On the first page of each manual, in a section labeled "Introduction," the manual stated, "The contents of this Manual shall not constitute nor be construed as . . . a contract between Multop Financial and any of its employees. The Manual is a summary of our policies, which are presented here only as a matter of information." The manuals contained provisions barring employees from disclosing any information provided by clients and stating that an employee's obligation of confidentiality would continue for three years after employment. Newman also signed a personnel policies document that contained an agreement not to compete for financial work within 50 miles for three years after his employment with Multop Financial. Throughout their time at Multop Financial, Ryan and Newman each signed various other agreements, including an agreement to sell Newman's client interests to Multop and various confidentiality agreements that contained similar provisions.

When Clarity bought Multop Financial, Newman and Ryan met with Bumstead and expressed that they would continue to work for the firm. As part of the transfer, Ryan signed a new employee manual with Clarity that contained the same disclaimer that it was not a contract, as well as confidentiality and

noncompete provisions. About a month later, on November 4, Ryan and Newman gave notice of their resignation and quickly began working at Salish Wealth Management, which is 0.1 miles away from Clarity's Bellingham offices. According to Bumstead, they immediately began contacting Clarity's clients to convince them to move to Salish and made false statements to convince them to do so. These clients left Clarity for Salish and took with them assets worth over $40,000,000.

Clarity sued Ryan, Newman, and Salish. It alleged that Ryan and Newman had breached their contracts and alleged that Clarity had justifiably relied on Ryan's and Newman's agreements to the employee manuals. It also accused Ryan, Newman, and Salish of intentional interference with business expectancy and defamation.

Salish, Ryan, and Newman moved for summary judgment, claiming that Clarity's claims failed because it was not a party to the majority of the contracts it was seeking to enforce, that it was estopped from claiming the employee manual was a contract because of the disclaimer that it was not a contract, and that Washington law does not allow an employer to pursue a claim for a violation of its own noncontractual employee handbook. The motion also challenged Clarity's defamation claim in passing, asserting that the claim was "derivative and not supported."

Clarity moved to continue the summary judgment hearing so that it could depose Ryan, Newman, and a representative of Salish to learn more about their intent and actions after leaving Clarity. It also responded to the motion for

summary judgment, but it did not address the defamation claim except to assert that respondents had not made any substantive reference to the claim beyond stating that it was derivative.

The trial court denied the motion for a continuance and granted the motion for summary judgment on all of Clarity's claims. Clarity moved for reconsideration, contending that the court had misapplied the law. The court denied the motion for reconsideration and granted attorney fees to Ryan, Newman, and Salish, based on attorney fee provisions in the employee manuals and Multop Financial confidentiality agreements.

Clarity appeals.

ANALYSIS

Clarity challenges the trial court's entry of summary judgment on its breach of contract, equitable reliance, tortious interference with business expectancy, and defamation claims. It also claims the trial court abused its discretion by denying its motion for continuance and motion for reconsideration and by awarding attorney fees to the respondents. We affirm on all counts.

Standard of Review

We review an order on summary judgment de novo. Strauss v. Premera Blue Cross, 194 Wn.2d 296, 300, 449 P.3d 640 (2019). We consider "the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party." Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). "Summary judgment is appropriate only when no genuine issue exists as to any material fact and the moving party is entitled to judgment

4

as a matter of law." Keck, 184 Wn.2d at 370 (footnote omitted). A court's decision on a motion to continue or a motion for reconsideration is reviewed for abuse of discretion. Tellevik v. 31641 W. Rutherford St., 120 Wn.2d 68, 90, 838 P.2d 111, 845 P.2d 1325 (1992) (motion to continue); Weems v. N. Franklin Sch. Dist., 109 Wn. App. 767, 777, 37 P.3d 354 (2002) (motion for reconsideration), abrogated on other grounds by Fed. Way Sch. Dist. No. 210 v. Vinson, 172 Wn.2d 756, 261 P.3d 145 (2011). The court abuses its discretion "if its decision is based on untenable grounds or untenable reasons." Briggs v. Nova Servs., 135 Wn. App. 955, 961, 147 P.3d 616 (2006), aff'd, 166 Wn.2d 794, 213 P.3d 910 (2009).

Contract Claims

Clarity asserts that the court erred by dismissing its contract claims. Because Clarity had no contract with Ryan or Newman to enforce, we disagree.

1. Multop Documents

First, Clarity is not a party to any contracts between Ryan or Newman and Multop Financial, and therefore it may not seek to enforce them.[1] Generally, someone who is not a party to a contract cannot seek to enforce the contract. Trane Co. v. Brown-Johnston, Inc., 48 Wn. App. 511, 520, 739 P.2d 737 (1987). However, if an owner of contract rights assigns its rights to a third party, the assignee "'steps into the shoes of the assignor, and has all the rights of the assignor.'" Carlile v. Harbour Homes, Inc., 147 Wn. App. 193, 208, 194 P.3d 280

---

[1] For purposes of this section, we assume without deciding that Ryan and Newman had entered into enforceable noncompete agreements with Multop Financial.

(2008) (quoting <u>Puget Sound Nat'l Bank v. Dep't of Revenue</u>, 123 Wn.2d 284, 292, 868 P.2d 127 (1994)), <u>review</u> <u>granted</u> <u>and</u> <u>dismissed</u>, 166 Wn.2d 1015 (2009). But contracts for professional services are personal and therefore not assignable. <u>Kim v. Moffett</u>, 156 Wn. App. 689, 704, 234 P.3d 279 (2010).

Here, while the PSA explicitly assigned Multop's consulting contract with a nonparty to Clarity, it did not attempt to assign or even make reference to any employee contracts. The only evidence that Clarity cites to support its claim that Multop's noncompete agreements were assigned to Clarity is an excerpt from Phillip Multop's declaration, which provides:

> I am informed that Aretha Ryan and Teddy Newman have alleged that it was not part of [the sale of assets to Clarity] that their agreements with my firm would transfer to Clarity as part of this transaction.
> . . . That is not true. They both understood that their agreements were transferring to Clarity as part of our transaction. In fact, they requested that specifically of me, to make sure they had job security after a new owner took over. They clearly understood that Matt Bumstead's purchase of the assets under management was intended with them to continue as part of the team; hence Matt's multiple meetings with them prior to the sale. . . .
> . . . .
> . . . It would make no sense for me to not transfer my agreements with my staff as part of the deal. That was intended all along. In fact, that is a main reason as to why I chose Matt Bumstead as the successor—because he fully intended to keep all staff in place.

This declaration focuses on the parties' intention that Ryan's and Newman's employment would continue with Clarity but fails to establish that any confidentiality or noncompete agreements were assigned or even discussed. Furthermore, Multop's claim that Ryan's and Newman's noncompete agreements were assigned to Clarity "as part of" the sale of Multop Financial's assets to

6

Clarity is contradicted by the plain language of the PSA, which explicitly states: "This Agreement . . . constitute[s] the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein, and supersede[s] all prior and contemporaneous understandings and agreements." The PSA does not purport to assign any agreements with Ryan or Newman to Clarity. Even if it did, such agreements for Ryan's and Newman's professional financial services would not be assignable. Kim, 156 Wn. App. at 704-05. The court therefore did not err by concluding that Clarity could not sue on the basis of Multop Financial's agreements with Ryan or Newman.

2. Clarity Handbook

Furthermore, the Clarity employee manual signed by Ryan does not form the basis for a breach of contract cause of action. Under Washington's objective theory of contract interpretation, we attempt to "ascertain the intent of the parties from the ordinary meaning of the words within the contract." Nye v. Univ. of Wash., 163 Wn. App. 875, 882-83, 260 P.3d 1000 (2011). Although the manual contained confidentiality and noncompete provisions, the first page contained an explicit statement that the manual "shall not constitute nor be construed as . . . a contract between Clarity Capital and any of its employees." Given this plain disclaimer, the Clarity manual cannot be considered a contract.[2]

Clarity objects that the court was not permitted to rule that the handbook did not constitute a contract because there was insufficient discussion of this

---

[2] Because we conclude that Clarity was not a party to any enforceable noncompete contract in this case, we do not address its argument that the manuals were sufficiently specific to constitute contracts.

issue in the summary judgment briefing. It is incorrect. The respondents' summary judgment briefing contended that Clarity was estopped from claiming breach of contract because of its disclaimer that the document "shall not constitute . . . a contract." This put Clarity's contract claims at issue, and we may uphold summary judgment on any grounds that are established by the pleadings and supported by the record. LaMon v. Butler, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989) (affirming summary judgment on basis of plaintiff's failure to meet its burden of proof even where this was not discussed below).[3]

### 3. Justifiable Reliance

Clarity next contends that even if its employment manual did not constitute a contract, it "justifiably relied on the representations" of Ryan and Newman that they agreed to the noncompetition and confidentiality clauses in the Clarity manual and various Multop Financial documents. Clarity's allegations under this claim precisely tracked the test from Thompson v. St. Regis Paper Co., 102 Wn.2d 219, 230, 685 P.2d 1081 (1984), which requires an employee seeking to enforce promises in an employee handbook to prove "(1) whether any statements therein amounted to promises of specific treatment in specific situations; (2) if so, whether the employee justifiably relied on any of these promises; and, finally, (3) whether any promises of specific treatment were breached."[4] Bulman v. Safeway, Inc., 144 Wn.2d 335, 340-41, 27 P.3d 1172

---

[3] This reasoning also applies to Clarity's justifiable reliance and implied contract claims.

[4] Clarity's complaint under its equitable reliance claim alleged that (1) "The statements in the Employee Manual and its associated documents regarding confidentiality of client information and non-solicitation amount to promises of

(2001). In Thompson, our Supreme Court noted after setting forth this cause of action that "employers will not always be bound by statements in employment manuals. They can specifically state in a conspicuous manner that nothing contained therein is intended to be part of the employment relationship and are simply general statements of company policy." 102 Wn.2d at 230.

Thompson's reasoning relied on the employer's "substantial control over both the working relationship and his employees." 102 Wn.2d at 229. We therefore decline to extend it to an employer seeking to enforce a manual against its employees, especially where, as here, the employer took advantage of the exception in Thompson and conspicuously noted that the manual was not a contract and was only an informational summary of Clarity's policies.

Clarity objects that it was not relying on Thompson but instead was making a generic claim that it justifiably relied on Ryan's and Newman's representations.[5] We reject its assertion that it could justifiably rely on Ryan's assent to a document drafted by Clarity, where Clarity specifically indicated that the contents "shall not constitute nor be construed as a promise of employment or as a contract between Clarity Capital and any of its employees." Clarity also

___

specific treatment in specific situations," (2) "[Clarity] justifiably relied on the representations of Ryan and Newman," and (3) "Ryan and Newman breached the promises."

[5] This appears to be a claim based on promissory estoppel, although Clarity does not characterize it as such. Promissory estoppel permits a party to enforce a noncontractual promise if it can establish "(1) A promise that (2) the promisor should reasonably expect to cause the promisee to change his position and (3) that does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise." Kim v. Dean, 133 Wn. App. 338, 348, 135 P.3d 978 (2006).

could not justifiably rely on Ryan's or Newman's promises to Multop Financial when those promises were specific to their employment with Multop Financial.

Clarity also disagrees on the grounds that the court should not have granted summary judgment because whether an employee manual creates a contract is an issue of fact. While this is generally true, "if reasonable minds cannot differ as to whether language sufficiently constitutes an offer or a promise of specific treatment in specific circumstances, as a matter of law the claimed promise cannot be part of the employment relationship." Swanson v. Liquid Air Corp., 118 Wn.2d 512, 522, 826 P.2d 664 (1992); Quedado v. Boeing Co., 168 Wn. App. 363, 373-75, 276 P.3d 365 (2012) (as a matter of law, employee documents that contained disclaimer of contractual rights on first page did not create binding promise). Similarly, though "justifiable reliance is normally a question of fact, summary judgment is appropriate if reasonable minds could reach but one conclusion." Cornerstone Equip. Leasing, Inc. v. MacLeod, 159 Wn. App. 899, 905, 247 P.3d 790 (2011). Because the facts here can only lead to the conclusion that Clarity did not justifiably rely on a promise, summary judgment on this issue was proper.

4. Implied Contract

Finally, the trial court properly granted summary judgment on Clarity's implied contract claim. Clarity claimed that even if the employment documents discussed above were not contracts, the "actions of the parties constitute an implied contract." Both implied contracts and express contracts "grow out of the intentions of the parties to the transaction, and there must be a meeting of minds

whether the contract be express or implied." Troyer v. Fox, 162 Wash. 537, 554, 298 P. 733 (1931) (emphasis omitted). Here, viewed in the light most favorable to Clarity, Ryan and Newman's actions consist of working for Clarity for a month, expressing an intent to stay there, and abiding by corporate policies while they worked there. Nothing in these actions establishes an intent to be bound by a covenant not to compete *after* leaving Clarity. We would be especially wary to find such an agreement through the actions of the parties, given that "public policy requires us to carefully examine covenants not to compete, even when protection of a legitimate business interest is demonstrated, because of equally competing concerns of freedom of employment and free access of the public to professional services." Knight, Vale & Gregory v. McDaniel, 37 Wn. App. 366, 370, 680 P.2d 448 (1984). We therefore affirm the court's grant of summary judgment on Clarity's breach of contract claims.

Tortious Interference with Business or Contractual Expectancy

Clarity challenges the court's entry of summary judgment on its claim of tortious interference with business expectancies or contractual expectancies. "The elements of tortious interference are: (1) The existence of a valid business expectancy; (2) defendant's knowledge of that expectancy; (3) defendant's intentional interference with that expectancy; (4) defendant's improper purpose or use of improper means in so interfering; and (5) the plaintiff's resultant damages." Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc., 86 Wn. App. 732, 745, 935 P.2d 628 (1997). Here, any interference with Clarity's business expectancies was not improper because Salish, Ryan, and Newman retained the right to

compete with Clarity for business.  Goodyear, 86 Wn. App. at 746.  Therefore, the court did not err by entering summary judgment on this issue.

### Defamation Claim

Clarity next challenges the court's grant of summary judgment on its defamation claim, contending that the respondents did not meet their burden to show the absence of an issue of material fact.  We disagree.

The purpose of summary judgment is to "avoid an unnecessary trial when there is no genuine issue of material fact."  Jacobsen v. State, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977).  When a defendant brings a motion for summary judgment, "the moving party bears the initial burden of showing the absence of an issue of material fact."  Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989).  If the moving party does so, then burden shifts to the plaintiff.  Young, 112 Wn.2d at 225.  "If, at this point, the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,'" then summary judgment is proper.  Young, 112 Wn.2d at 225 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

The moving defendant can meet their burden by showing that there is an absence of evidence to support the plaintiff's case.  Young, 112 Wn.2d at 225 n.1.  In such a case, the moving party does not need to support the motion with affidavits but must still identify the portions of the record which demonstrate the absence of a genuine issue of material fact.  White v. Kent Med. Ctr., Inc., 61 Wn. App. 163, 170, 810 P.2d 4 (1991).  In White, White sued for medical

malpractice and the defendants moved for summary judgment, in part on the grounds that White "lacked any admissible expert testimony regarding the [defendants'] standard of care." 61 Wn. App. at 165-66. White responded by pointing to excerpts of depositions that she claimed did establish the standard of care, and it was not until their reply that the defendants pointed to evidence supporting their claim. White, 61 Wn. App. at 166-67, 170. We noted that the defendants "only marginally complied" with their initial burden, but did not reverse on those grounds and instead acknowledged that "[i]t is difficult to prove a negative, and in some circumstances the only way that the moving party will be able to show that there is no material issue of fact is by way of reply to the responding party's citations to the record." White, 61 Wn. App. at 170-71. We concluded by emphasizing "that only rarely will a moving party comply with the strict requirements [of the initial burden] without having made specific citations to the record in its opening materials." White, 61 Wn. App. at 171.

We conclude that this is one of those rare instances. The respondents' motion asked the court to dismiss Clarity's entire lawsuit and stated in particular that Clarity's defamation claim was "derivative and not supported." While the respondents' discussion of the defamation claim was notably cursory, there was a similarly marked lack of evidence to support defamation in the record. In fact, the only evidence in support of this claim was a declaration from Bumstead which stated:

> Ryan, Newman, and Salish have engaged in a systematic campaign of false statements to Clarity clients with the goal of misleading Clarity clients and taking them . . . .

> . . . The false statements . . . have included statements about the following:
> - That Multop is no longer in business.
> - That Clarity's owner and main producer does not work in the business.
> - That the remaining advisors at Clarity have no experience.
> - That the previous owner of Multop Financial, Phil Multop, is not working in the business any longer.[6]

These statements are a virtually verbatim repetition of Clarity's allegations in its complaint.[7]  See LaPlante v. State, 85 Wn.2d 154, 158, 531 P.2d 299 (1975) (adverse party in summary judgment "may not rest on mere allegations in the pleadings but must set forth specific facts showing that there is a genuine issue for trial").  They are also woefully inadequate as evidence, given their lack of foundation and the fact that they appear to be hearsay.  Dunlap v. Wayne, 105 Wn.2d 529, 535-36, 716 P.2d 842 (1986) (summary judgment dismissal of defamation claim was proper where only evidence of false statements was based on inadmissible hearsay).  We have noted that it is "difficult to prove a negative" and conclude that in this case, the respondents met their burden by pointing out that Clarity had failed to provide support for its defamation claim.  White, 61 Wn. App. 170-71.  Clarity subsequently failed to point to any evidence of defamation in its responsive pleading, apparently because of its belief that the respondents

---

[6] The respondents note that in our review of a summary judgment order, we "'consider only evidence and issues called to the attention of the trial court.'" Mithoug v. Apollo Radio of Spokane, 128 Wn.2d 460, 462, 909 P.2d 291 (1996) (emphasis omitted) (quoting RAP 9.12).  This declaration was not called to the attention of the trial court by any party at summary judgment, and we discuss it only to the extent that it bears on whether the respondents met their burden.

[7] The only alteration is that Bumstead's declaration also attributes the "systematic campaign" to Salish, not just Ryan and Newman.

14

had a burden to "go forward with some measure of affirmative evidence." This belief was incorrect. Respondents met their burden for summary judgment by pointing out Clarity's failure to offer any support for its defamation claim. Accordingly, we conclude that the trial court did not err by granting summary judgment on the defamation claim.

## Motion for Continuance

Clarity also claims that the court abused its discretion by denying its motion for continuance. We disagree.[8]

If a party shows that they cannot present facts essential to justify their opposition to a motion for summary judgment, the court "may order a continuance to permit affidavits to be obtained or depositions to be taken." CR 56(f). The court may deny a motion to continue a motion for summary judgment if "1) the moving party does not offer a good reason for the delay in obtaining the evidence; 2) the moving party does not state what evidence would be established through the additional discovery; or 3) the evidence sought will not raise a genuine issue of fact." Coggle v. Snow, 56 Wn. App. 499, 507, 784 P.2d 554 (1990).

---

[8] We reject the respondents' contention that Clarity waived this argument by participating in the summary judgment hearing without objecting, even though Clarity had already filed a motion to this effect. The respondents cite no Washington law to support this contention. See DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

Here, Clarity moved for a continuance in order to depose Ryan, Newman, and a representative of Salish. Clarity claims this continuance was necessary in order to ascertain Ryan's and Newman's intent and their reliance on the fact that they did not have contracts with Clarity restricting their right to move to Salish.[9] However, contrary to Clarity's claim, information regarding Ryan's and Newman's intent or their reliance on Clarity's representation that the manual was not a contract would have no impact on the court's determinations that there was no valid contract and that *Clarity* could not reasonably rely on *Ryan's and Newman's* representations. Thus, because the information Clarity sought failed to raise a genuine issue of material fact, the court did not abuse its discretion by denying the motion to continue.

Motion for Reconsideration

Clarity moved for reconsideration after the court entered summary judgment on the basis that the court made errors of law. Because we hold that the court did not err by entering summary judgment, we also conclude that it did not abuse its discretion by denying the motion for reconsideration.

Attorney Fees

Finally, Clarity challenges the trial court's award of attorney fees to the respondent. Clarity claims that (1) the court erred by awarding attorney fees because there was no contract providing for attorney fees, (2) even if attorney

---

[9] Clarity also claims that it needed to "explor[e] . . . the role that Salish played in encouraging these defections, as well as the specific contacts [Ryan and Newman] made with Clarity clients." However, Clarity did not identify this as evidence it was seeking below, and so we decline to consider it in determining whether the trial court abused its discretion.

fees were justified, the court erred by awarding attorney fees for work on the tortious interference claim, and (3) the court's fee award was unreasonable. We disagree.

    1. <u>Basis for Attorney Fee Award</u>

Clarity first contends that the court erred by awarding attorney fees based on the attorney fee provision in the employee manuals. We disagree.

Whether a party is entitled to attorney fees is an issue of law which we review de novo. <u>Ethridge v. Hwang</u>, 105 Wn. App. 447, 460, 20 P.3d 958 (2001). RCW 4.84.330 provides that, "[i]n any action on a contract" that provides for attorney fees to a party seeking to enforce the contract, the prevailing party is entitled to reasonable attorney fees. We have interpreted this language to "encompass[ ] any action in which it is alleged that a person is liable on a contract." <u>Herzog Alum., Inc. v. Gen. Am. Window Corp.</u>, 39 Wn. App. 188, 197, 692 P.2d 867 (1984). Our Supreme Court has affirmed that this is true "even when the contract containing the attorneys fee provision is invalidated." <u>Labriola v. Pollard Grp., Inc.</u>, 152 Wn.2d 828, 839, 100 P.3d 791 (2004). The attorney fee provision also applies if an assignee seeks to enforce the agreement. <u>See</u>, <u>e.g.</u>, <u>Sunkidd Venture, Inc. v. Snyder-Entel</u>, 87 Wn. App. 211, 212 n.1, 217, 941 P.2d 16 (1997) (assignee of lease would be entitled to attorney fees if it prevailed on remand).

Here, Clarity sued for breach of contract based on the confidentiality and noncompete policies contained in the employee manuals and Newman's sale of client account interests. Although the trial court concluded, and we agreed, that

there was no assignment of contracts to Clarity and the manuals do not constitute contracts, Ryan and Newman are entitled to attorney fees because Clarity was suing for breach of contract based on these documents. If Clarity had been successful in showing that there was an assignment or that the manuals were contracts, it would be entitled to attorney fees for breach of contract. Awarding fees to Ryan and Newman thus comports with the "remedial purpose behind the enactment of RCW 4.84.330—that unilateral attorney's fees provisions be applied bilaterally." Mut. Sec. Fin. v. Unite, 68 Wn. App. 636, 643, 847 P.2d 4 (1993) (holding that party was not entitled to attorney fees where other party would not have been entitled to attorney fees if it had prevailed).

Clarity disagrees and contends that we should follow Wallace v. Kuehner, 111 Wn. App. 809, 820, 46 P.3d 823 (2002), in which Division Two declined to apply the holding of Herzog to a case where the parties seeking fees did not intend to form a contract. However, as the court noted in that case, "Division One has firmly embraced the concept first presented in Herzog." Wallace, 111 Wn. App. 821. Indeed, we have applied Herzog to cases like this one, where a party prevailed on a breach of contract claim by showing that there was no evidence it had ever entered into the contract that provided for attorney fees. Bogle & Gates, P.L.L.C. v. Holly Mountain Res., 108 Wn. App. 557, 562-63, 32 P.3d 1002 (2001). We do so again here.

2. Attorney Fees for Tortious Interference

Clarity next contends that the trial court erred by awarding attorney fees to Salish on the tortious interference claims. However, "[t]he court may award

18

attorney fees for claims other than breach of contract when the contract is central to the existence of the claims, i.e., when the dispute actually arose from the agreements." Deep Water Brewing, LLC v. Fairway Res. Ltd., 152 Wn. App. 229, 278, 215 P.3d 990 (2009). Here, Clarity alleged tortious interference on the basis that it had contracts with Ryan and Newman, and that Ryan, Newman, or Salish were wrongfully interfering with Clarity's interests in those contracts.[10] Thus, the agreements are central to Clarity's tortious interference claims. We have held that where a contract is central to a tortious interference claim against a given party, attorney fees may be appropriate even if it was not a party to the contract. Deep Water, 152 Wn. App. at 278-79. This is the case here.

Clarity's reliance on Tradewell Grp., Inc. v. Mavis, 71 Wn. App. 120, 857 P.2d 1053 (1993), is not persuasive. In that case, we denied attorney fees on a tortious interference claim because it did not arise out of a contract. Tradewell, 71 Wn. App. at 130. We therefore affirm the trial court's award of attorney fees for the tortious interference claims.

3. Reasonableness of Fee Award

Finally, Clarity contends that the amount of fees awarded was unreasonable. "A trial judge is given broad discretion in determining the reasonableness of an award, and in order to reverse that award, it must be shown that the trial court manifestly abused its discretion." Ethridge, 105 Wn.

---

[10] Clarity's complaint alleged specifically that "[t]he actions of Salish constitute an intentional interference inducing a breach of Clarity's reasonable expectancy in compliance with the terms of the confidentiality and non-compete provisions of the Employee Manual and other policy statements."

App. at 460. Here, the court found that "the fees requested by [the respondents] are reasonable and reflect the time expended, the difficulty of the questions involved, the skill required, the customary charges of other attorneys, and the resulting benefit to the client." It also found that, while the respondents were not entitled to fees for Clarity's defamation claim, the respondents "have appropriately removed billing records referencing that claim, and have reduced all entries following the summary judgment hearing by half. These reductions appropriately reflect time reasonably spent on the defamation claim." Clarity does not challenge these findings, so they are verities on appeal. State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003). We therefore reject Clarity's argument that the fee award is unreasonable. Furthermore, because Ryan, Newman, and Salish have prevailed on appeal, they are entitled to reasonable attorney fees for time spent on all issues other than the defamation claim. Herzog, 39 Wn. App. at 197.

We affirm.

_____

WE CONCUR:

_____        _____
Mann, C.J.                      Appelwick, J.

20